Opinion
DETJEN, Acting P. J.—
INTRODUCTION
Victor Leon Buford (defendant), an inmate serving a term of 25 years to life in prison following conviction of a felony that was not violent (as defined by Pen. Code, § 667.5, subd. (c)) or serious (as defined by Pen. Code, § 1192.7, subd. (c)), filed a petition pursuant to the Three Strikes Reform Act of 2012 (hereafter Proposition 36 or the Act) to have his sentence recalled and to be resentenced.[1] (§ 1170.126, subd. (b).) Following a hearing, the trial court concluded resentencing would pose an unreasonable risk of danger to public safety and denied the petition.
In the published portion of this opinion, we hold the People have the burden of proving, by a preponderance of the evidence, facts on which a finding that resentencing a petitioner would pose an unreasonable risk of danger to public safety reasonably can be based. Those facts are reviewed for substantial evidence. We further hold the preponderance of the evidence standard does not apply to the trial court’s determination regarding dangerousness, nor does section 1170.126, subdivision (1), create a presumption in favor of resentencing. The ultimate decision—whether resentencing an inmate would pose an unreasonable risk of danger to public safety—instead lies within the sound discretion of the trial court. We also hold section 1170.18, subdivision (c) does not modify section 1170.126, subdivision (1). As we explain in the unpublished portion of our opinion, we find no abuse of discretion and affirm.
*894 FACTS AND PROCEDURAL HISTORY*

DISCUSSION
I
The Applicable Legal Principles
In order to be eligible for resentencing as a second strike offender under the Act, the inmate petitioner must satisfy the three criteria set out in subdivision (e) of section 1170.126.[12] (People v. Superior Court (Martinez) (2014) 225 Cal.App.4th 979, 988-989 [170 Cal.Rptr.3d 763].) If the inmate satisfies all three criteria, as did defendant, he or she “shall be resentenced [as a second strike offender] unless the court, in its discretion, determines that resentencing the [inmate] would pose an unreasonable risk of danger to public safety.” (§ 1170.126, subd. (f).) In exercising this discretion, “the court may consider: [¶] (1) The [inmate]’s criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The [inmate] ’s disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety.” {Id., subd. (g).)
A. A trial court’s ultimate determination regarding dangerousness lies within its discretion; its ruling, therefore, is reviewed for abuse of discretion.
The plain language of subdivisions (1) and (g) of section 1170.126 calls for an exercise of the sentencing court’s discretion. “ ‘Discretion is the power to make the decision, one way or the other.’ [Citation.]” {People v. *895 Carmony (2004) 33 Cal.4th 367, 375 [14 Cal.Rptr.3d 880, 92 P.3d 369].) “Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion ‘must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]’ [Citation.]” (People v. Rodrigues (1994) 8 Cal.4th 1060, 1124-1125 [36 Cal.Rptr.2d 235, 885 P.2d 1]; see People v. Williams (1998) 17 Cal.4th 148, 162 [69 Cal.Rptr.2d 917, 948 P.2d 429] [abuse of discretion review asks whether ruling in question falls outside bounds of reason under applicable law and relevant facts].)
Under the clear language of section 1170.126, the ultimate determination that resentencing would pose an unreasonable risk of danger is a discretionary one. We, therefore, review that determination for abuse of discretion. Of course, if there is no evidence in the record to support the decision, the decision constitutes an abuse of discretion. (See In re Robert L. (1993) 21 Cal.App.4th 1057, 1066 [24 Cal.Rptr.2d 654].)
B. The burden of proof of preponderance of the evidence applies to proof of the facts, not to the trial court’s ultimate determination.
Defendant asserts he cannot be denied resentencing unless the People proved dangerousness beyond a reasonable doubt. Alternatively, he says, the People must at least have proven the ultimate conclusion of dangerousness by a preponderance of the evidence. Although we agree preponderance of the evidence is the appropriate standard, we disagree with defendant on its application to the ultimate determination.[13]
“The standard of proof, the United States Supreme Court has said, ‘serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.’ [Citation.] At one end of the spectrum is the ‘preponderance of the evidence’ standard, which apportions the risk of error among litigants in roughly equal fashion. [Citation.] At the other end of the spectrum is the ‘beyond a reasonable doubt’ standard applied in criminal cases, in which ‘our society imposes almost the entire risk of error upon itself.’ [Citation.] Between those two standards is the intermediate standard of clear and convincing evidence. [Citation.] These three standards are codified in California’s Evidence Code. Section 115 of that code states: ‘The burden of proof may require a party to . . . establish the existence or nonexistence of a fact by a preponderance of the evidence, by *896 clear and convincing proof, or by proof beyond a reasonable doubt. [¶] Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence.’ (Italics added.)
“If the Legislature has not established a standard of proof, a court must determine the appropriate standard by considering all aspects of the law. [Citation.] No standard of proof is specified in sechon [1170.126] ....
“ ‘The standard of proof that is required in a given instance has been said to reflect “. . . the degree of confidence our society thinks [the factfinder] should have in the correctness of factual conclusions for a particular type of adjudication.” . . . The standard of proof may therefore vary, depending upon the gravity of the consequences that would result from an erroneous determination of the issue involved.’ [Citations.]” (People v. Arriaga (2014) 58 Cal.4th 950, 961-962 [169 Cal.Rptr.3d 678, 320 P.3d 1141].)
“In enachng section 1170.126 as part of Proposition 36, the issue before the voters was not whether a defendant could or should be punished more harshly for a particular aspect of his or her offense, but whether, having already been found to warrant an indeterminate life sentence as a third strike offender, he or she should now be eligible for a lesser term.” (People v. Osuna (2014) 225 Cal.App.4th 1020, 1036 [171 Cal.Rptr.3d 55].) Although voters could have permitted automatic resentencing, under any and all circumstances, of those eligible therefor, they did not do so. This demonstrates a recognihon of two highly plausible scenarios: (1) Some inmates sentenced to indeterminate terms under the original version of the three strikes law for crimes not defined as serious or violent felonies may have started out not posing any greater risk of danger than recidivists who will now be sentenced to determinate terms as second strike offenders under the prospective provisions of the Act, but have become violent or otherwise dangerous while imprisoned; or (2) Enough time might have passed since some inmates committed their criminal offenses so that those offenses no longer make such inmates dangerous, but other factors do. Because of the severe consequences to society that may result if a dangerous inmate is resentenced as a second strike offender and released to the community upon completion of his or her term with little or no supervision (see, e.g., § 3451) and without undergoing any suitability assessment (see, e.g., In re Lawrence (2008) 44 Cal.4th 1181, 1204 [82 Cal.Rptr.3d 169, 190 P.3d 535]), we believe it appropriate to apporhon the risk of error in roughly equal fashion.
Division Three of the Second District Court of Appeal has stated that, where a court’s discretion under sechon 1170.126, subdivision (f) is concerned, the People bear the burden of proving “dangerousness” by a preponderance of the evidence. (Kaulick, supra, 215 Cal.App.4th at pp. 1301-1305 *897 & fn. 25; see Evid. Code, § 115.) That court determined this is so because “dangerousness is not a factor which enhances the sentence imposed when a defendant is resentenced under the Act; instead, dangerousness is a hurdle which must be crossed in order for a defendant to be resentenced at all.” (Kaulick, supra, at p. 1303.) Kaulick explained: “The maximum sentence to which Kaulick, and those similarly situated to him, is subject was, and shall always be, the indeterminate life term to which he was originally sentenced. While [the Act] presents him with an opportunity to be resentenced to a lesser term, unless certain facts are established, he is nonetheless still subject to the third strike sentence based on the facts established at the time he was originally sentenced. As such, a court’s discretionary decision to decline to modify the sentence in his favor can be based on any otherwise appropriate factor (i.e., dangerousness), and such factor need not be established by proof beyond a reasonable doubt to a jury.” {Ibid.)
In People v. Blakely (2014) 225 Cal.App.4th 1042, 1059-1062 [171 Cal.Rptr.3d 70] (Blakely), we rejected the claim an inmate seeking resentenc-ing pursuant to section 1170.126 had a Sixth Amendment right to a jury determination, beyond a reasonable doubt, on the question of conduct constituting a disqualifying factor. We concluded that Apprendi v. New Jersey (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] (Apprendi) and its progeny (e.g., Alleyne v. United States (2013) 570 U.S. _ [186 L.Ed.2d 314, 133 S.Ct. 2151]; Cunningham v. California (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856] (Cunningham); Blakely v. Washington (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531]) “do not apply to a determination of eligibility for resentencing under the Act.” (Blakely, supra, 225 Cal.App.4th at p. 1060.) We also relied heavily on Kaulick.
In rejecting application of the beyond a reasonable doubt standard, Kaulick discussed the United States Supreme Court’s conclusion in Dillon v. United States (2010) 560 U.S. 817, 828 [177 L.Ed.2d 271, 130 S.Ct. 2683] (Dillon), that “a defendant’s Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt do not apply to limits on downward sentence modifications due to intervening laws.” (Kaulick, supra, 215 Cal.App.4th at p. 1304.) Kaulick found Dillon’s language applicable. Since the retrospective part of the Act is not constitutionally required, but an act of lenity on the part of the electorate and provides for a proceeding where the original sentence may be modified downward, any facts found at such a proceeding, such as dangerousness, do not implicate Sixth Amendment issues. Thus, there is no constitutional requirement that the facts be established beyond a reasonable doubt. (Kaulick, supra, at pp. 1304-1305.)[14]
*898 Although in Blakely we applied Kaulick’s analysis to the initial determination of eligibility for resentencing under the Act (Blakely, supra, 225 Cal.App.4th at p. 1061), it applies equally to the issue whether resentencing the petitioner would pose an unreasonable risk of danger to public safety. A denial of an inmate’s petition does not increase the penalty to which the inmate is already subject, but instead removes the inmate from the scope of an act of lenity on the part of the electorate to which he or she is not constitutionally entitled. (Id. at p. 1062.) That the denial is based on a determination of dangerousness does not change that conclusion.
Kaulick found the prosecution bears the burden of establishing “dangerousness” by a preponderance of the evidence against a claim the Apprendi line of cases requires proof beyond a reasonable doubt. (Kaulick, supra, 215 Cal.App.4th at pp. 1301-1302.) As a result, it had no real occasion to address the interplay between the burden of proof and the trial court’s exercise of discretion as that issue is presented here, or to clarify whether the prosecution is required to establish “dangerousness” in the sense of facts upon which the trial court can base the ultimate determination resentencing a pehtioner would pose an unreasonable risk of danger to public safety, or in the sense of establishing that determination itself.[15] Nevertheless, we believe it supports our interpretation.
Accordingly, we hold preponderance of the evidence is the applicable standard of proof, regardless whether we analyze the issue as one of Sixth Amendment jurisprudence or due process. (See People v. Flores, supra, 227 Cal.App.4th at p. 1076.)[16]
This does not, however, mean the trial court must apply that standard in making its ultimate determination whether to resentence a petihoner, or we *899 must review that determination for substantial evidence. Nor does it mean evidence of dangerousness must preponderate over evidence of rehabilitation for resentencing to be denied.
The language of section 1170.126, subdivision (1) expressly provides the petitioner shall be resentenced unless the court, in its discretion, makes a determination that resentencing would pose an unreasonable risk of danger to public safety. The statute does not say the petitioner shall be resentenced unless the People prove resentencing would pose such a risk.
Considering the language of subdivisions (f) and (g) of section 1170.126, we conclude the People have the burden of establishing, by a preponderance of the evidence, facts from which a determination resentenc-ing the petitioner would pose an unreasonable risk of danger to public safety can reasonably be made. The reasons a trial court finds resentencing would pose an unreasonable risk of danger, or its weighing of evidence showing dangerousness versus evidence showing rehabilitation, lie within the court’s discretion. The ultimate determination that resentencing would pose an unreasonable risk of danger is a discretionary one. While the determination must be supported by facts established by a preponderance, the trial court need not itself find an unreasonable risk of danger by a preponderance of the evidence. (See In re Robert L, supra, 21 Cal.App.4th at pp. 1065-1067 [discussing abuse of discretion and preponderance of the evidence standards].)
Such an interpretation is consistent with California’s noncapital sentencing scheme.[17] Under the determinate sentencing law (DSL) as it existed prior to Cunningham, “three terms of imprisonment [were] specified by statute for most offenses. The trial court’s discretion in selecting among [those] options [was] limited by section 1170, subdivision (b), which direct[ed] that ‘the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime.’ ” (People v. Black (2007) 41 Cal.4th 799, 808 [62 Cal.Rptr.3d 569, 161 P.3d 1130], fn. omitted.) Trial courts had “broad discretion” to impose the lower or upper term instead of the middle term of imprisonment (People v. Scott (1994) 9 Cal.4th 331, 349 [36 Cal.Rptr.2d 627, 885 P.2d 1040]), and generally were required by the statutes and sentencing rules to state reasons for their discretionary sentencing choices {ibid.). Such reasons had to be “supported by a preponderance of the evidence in the record” and reasonably related to the particular sentencing *900 determination. (Ibid.; see Cal. Rules of Court, former rule 4.420(b).) Even after the DSL was reformed and amended in response to Cunningham, so as to eliminate judicial factfinding in selection of the appropriate term when three possible prison terms are specified by statute, establishment of facts by a preponderance of the evidence remains necessary with respect to certain discretionary sentencing decisions. (See In re Coley (2012) 55 Cal.4th 524, 557-558 [146 Cal.Rptr.3d 382, 283 P.3d 1252],)[18]
In People v. Sandoval (2007) 41 Cal.4th 825, 850-851 [62 Cal.Rptr.3d 588, 161 P.3d 1146], the California Supreme Court stated that, in making its discretionary sentencing choices post-Cunningham, “the trial court need only ‘state [its] reasons’ [citation]; it is not required to identify aggravating and mitigating factors, apply a preponderance of the evidence standard, or specify the ‘ultimate facts’ that ‘justify[] the term selected.’ [Citations.] Rather, the court must ‘state in simple language the primary factor or factors that support the exercise of discretion.’ [Citation.]” (Italics added.)
The trial court’s ultimate determination when considering a petition for resentencing under section 1170.126 is analogous to an evaluation of the relative weight of mitigating and aggravating circumstances. Such an evaluation “is not equivalent to a factual finding.” (People v. Black, supra, 41 Cal.4th at p. 814, fn. 4.) It follows, then, that the trial court need not apply a preponderance of the evidence standard, in that it need not find resentencing the petitioner would, more likely than not, pose an unreasonable risk of danger to public safety. (See Kaulick, supra, 215 Cal.App.4th at p. 1305, fn. 28 [preponderance standard means “ ‘more likely than not’ ”].)[19]
*901 To summarize, a trial court need not determine, by a preponderance of the evidence, that resentencing a petitioner would pose an unreasonable risk of danger to public safety before it can properly deny a petition for resentencing under the Act. Nor is the court’s ultimate determination subject to substantial evidence review. Rather, its finding will be upheld if it does not constitute an abuse of discretion, i.e., if it falls within “the bounds of reason, all of the circumstances being considered. [Citations.]” (People v. Giminez (1975) 14 Cal.3d 68, 72 [120 Cal.Rptr. 577, 534 P.2d 65].) The facts upon which the court’s finding of unreasonable risk is based must be proven by the People by a preponderance of the evidence, however, and are themselves subject to our review for substantial evidence. If a factor (for example, that the petitioner participated in a riot, is violent due to repeated instances of mutual combat, etc.) is not established by a preponderance of the evidence, it cannot form the basis for a finding of unreasonable risk. (See People v. Cluff (2001) 87 Cal.App.4th 991, 998 [105 Cal.Rptr.2d 80] [trial court abuses its discretion when factual findings critical to decision find no support in record]; cf. People v. Read (1990) 221 Cal.App.3d 685, 689-691 [272 Cal.Rptr. 197] [where trial court erroneously determined the defendant was statutorily ineligible for probation, reviewing court had to decide whether trial court gave sufficient other reasons, supported by facts of case, for probation denial].)
C. Section 1170.126 does not establish or contain a presumption a petitioner’s sentence must be reduced.
Subdivision (f) of section 1170.126 provides that an eligible petitioner “shall be resentenced” as a second strike offender “unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.” Defendant contends this language creates a presumption in favor of resentencing.
Defendant first points to the “shall”/“unless” formulation employed by the statute. Under People v. Guinn (1994) 28 Cal.App.4th 1130, 1141-1142 [33 Cal.Rptr.2d 791] and its progeny (e.g., People v. Murray (2012) 203 Cal.App.4th 277, 282 [136 Cal.Rptr.3d 820]; People v. Ybarra (2008) 166 *902 Cal.App.4th 1069, 1089 [83 Cal.Rptr.3d 340]), all of which deal with section 190.5, subdivision (b),[20] defendant argues that at the time Proposition 36 was enacted, it had long been the law that the “shall” option was the presumptive punishment, and so voters must have intended this then-prevailing judicial interpretation to apply. (See People v. Harrison (1989) 48 Cal.3d 321, 329 [256 Cal.Rptr. 401, 768 P.2d 1078]; People v. Weidert (1985) 39 Cal.3d 836, 844 [218 Cal.Rptr. 57, 705 P.2d 380].)
The California Supreme Court disapproved the foregoing line of cases in People v. Gutierrez (2014) 58 Cal.4th 1354, 1370, 1387 [171 Cal.Rptr.3d 421, 324 P.3d 245]. Leaving aside constitutional questions raised by establishing a presumption in favor of life without parole for juveniles after the United States Supreme Court’s opinion in Miller v. Alabama (2012) 567 U.S. 460 [183 L.Ed.2d 407, 132 S.Ct. 2455], the state high court’s review of the text of section 190.5, subdivision (b) led it to conclude the syntax is ambiguous concerning any presumption. The court stated: “It is not unreasonable to read this text ... to mean that a court ‘shall’ impose life without parole unless ‘at the discretion of the court’ a sentence of 25 years to life appears more appropriate. [Citation.] But it is equally reasonable to read the text to mean that a court may select one of the two penalties in the exercise of its discretion, with no presumption in favor of one or the other. The latter reading accords with common usage. For example, if a teacher informed her students that ‘you must take a final exam or, at your discretion, write a term paper,’ it would be reasonable for the students to believe they were equally free to pursue either option. The text of section 190.5[, subdivision ](b) does not clearly indicate whether the statute was intended to make life without parole the presumptive sentence.” (People v. Gutierrez, supra, 58 Cal.4th at p. 1371.)
The same example can be applied to the syntax of section 1170.126, subdivision (1). Because a reading that affords no presumption “accords with common usage” (People v. Gutierrez, supra, 58 Cal.4th at p. 1371), we reject the notion voters must have intended there to be a presumption in favor of resentencing or that courts have only limited discretion to deny resentencing (see People v. Carmony, supra, 33 Cal.4th at pp. 377-378 [discussing courts’ circumscribed power to depart, under § 1385, subd. (a) and People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 529-530 [53 Cal.Rptr.2d 789, 917 P.2d 628] (Romero), from sentencing norm established by three strikes law]). A court considering whether to resentence an eligible petitioner under section *903 1170.126, subdivision (1) has circumscribed discretion in the sense it can only refuse to resentence if it finds that to do so would pose an unreasonable risk of danger to public safety on the facts of the particular case before it.[21] This does not mean, however, its discretion is circumscribed in the sense it can only find dangerousness in extraordinary cases. To the contrary, it can do so in any case in which such a finding is rational under the totality of the circumstances.
Such a conclusion comports with the plain language of the statute. Moreover, a conclusion resentencing to a second strike term is a generally mandatory presumption from which courts can depart only in extraordinary cases, as defendant asserts, would run directly contrary to the intent of the voters in passing the Act. (See People v. Gutierrez, supra, 58 Cal.4th at pp. 1371-1372 [examining legislative history and voter intent in attempt to resolve statutory ambiguity].) As we stated in People v. Osuna, supra, 225 Cal.App.4th at page 1036, “ ‘[ejnhancing public safety was a key purpose of the Act’ [citation].” Thus, although one purpose of the Act was to save taxpayer dollars (People v. Osuna, supra, at p. 1037), ‘“[i]t is clear the electorate’s intent was not to throw open the prison doors to all third strike offenders whose current convictions were not for serious or violent felonies, but only to those who were perceived as nondangerous or posing little or no risk to the public” {id. at p. 1038, second italics added). Had voters intended to permit retention of an indeterminate term only in extraordinary cases, they would have said so in subdivision (1) of section 1170.126, rather than employing language that affords courts broad discretion to find dangerousness. They also would not have afforded the trial court the power to consider any evidence it determined to be relevant to the issue as they did in subdivision (g)(3) of the statute.
D. Section 1170.18, subdivision (c), enacted pursuant to Proposition 47, does not modify section 1170.126, subdivision (f).
On November 4, 2014, voters enacted Proposition 47, ‘“the Safe Neighborhoods and Schools Act” (hereafter Proposition 47). It went into effect the next day. (Cal. Const., art. II, § 10, subd. (a).) Insofar as is pertinent here, Proposition 47 reduced to misdemeanors certain drug- and theft-related offenses that previously were felonies or ‘“wobblers,” unless they were committed by certain ineligible defendants. Proposition 47 also created a new resentencing provision—section 1170.18—by which a person currently serving a felony sentence for an offense that is now a misdemeanor, may petition *904 for a recall of that sentence and request resentencing in accordance with the offense statutes as added or amended by Proposition 47. (§ 1170.18, subd. (a).) A person who satisfies the criteria in subdivision (a) of section 1170.18 shall have his or her sentence recalled and be “resentenced to a misdemeanor . . . unless the court, in its discretion, determines that resentenc-ing the petitioner would pose an unreasonable risk of danger to public safety.” {Id., subd. (b).)[22]
Hidden in the lengthy, fairly abstruse text of the proposed law, as presented in the official ballot pamphlet—and nowhere called to voters’ attention—is the provision defendant contends applies to his petition for resentencing under Proposition 36. Subdivision (c) of section 1170.18 provides: “As used throughout this Code, ‘unreasonable risk of danger to public safety’ means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667.” Section 667, subdivision (e)(2)(C)(iv) lists the following felonies, sometimes called “super strike” offenses:
“(I) A ‘sexually violent offense’ as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code.
“(II) Oral copulation with a child who is under 14 years of age, and who is more than 10 years younger than he or she as defined by Section 288a, sodomy with another person who is under 14 years of age and more than 10 years younger than he or she as defined by Section 286, or sexual penetration with another person who is under 14 years of age, and who is more than 10 years younger than he or she, as defined by Section 289.
“(Ill) A lewd or lascivious act involving a child under 14 years of age, in violation of Section 288.
“(IV) Any homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive.
“(V) Solicitation to commit murder as defined in Section 653f.
“(VI) Assault with a machine gun on a peace officer or firefighter, as defined in paragraph (3) of subdivision (d) of Section 245.
“(VII) Possession of a weapon of mass destruction, as defined in paragraph (1) of subdivision (a) of Section 11418.
*905 “(VIII) Any serious and/or violent felony offense punishable in California by life imprisonment or death.”
The question is whether section 1170.18, subdivision (c) now limits a trial court’s discretion to deny resentencing under the Act to those cases in which resentencing the defendant would pose an unreasonable risk he or she will commit a new “super strike” offense. Defendant says it does. The People disagree. We agree with the People.[23]
“ ‘In interpreting a voter initiative . . . , we apply the same principles that govern statutory construction. [Citation.]’ [Citation.] ‘ “The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.]” ’ [Citation.]” (People v. Superior Court (Cervantes) (2014) 225 Cal.App.4th 1007, 1014 [171 Cal.Rptr.3d 86].) Thus, in the case of a provision adopted by the voters, “their intent governs. [Citations.]” (People v. Jones (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163].)
To determine intent, “ ‘we look first to the words themselves. [Citations.]’ ” (People v. Superior Court (Cervantes), supra, 225 Cal.App.4th at p. 1014.) We give the statute’s words “ ‘a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language “in isolation.” [Citation.] Rather, we look to “the entire substance of the statute .. . in order to determine the scope and purpose of the provision .... [Citation.]” [Citation.] That is, we construe the words in question “ ‘in context, keeping in mind the nature and obvious purpose of the statute [Citation.]” [Citation.] We must harmonize “the various parts of a statutory enactment... by considering the particular clause or section in the context of the statutory framework as a whole.” [Citations.]’ [Citation.]” (People v. Acosta (2002) 29 Cal.4th 105, 112 [124 Cal.Rptr.2d 435, 52 P.3d 624].) We “accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. . . . [Statutes or statutory sections relating to the *906 same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.]” (Dyna-Med, Inc. v. Fair Employment & Housing Com. (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)
“ ‘ “When statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it.” [Citation.]’ [Citation.]” (People v. Hendrix (1997) 16 Cal.4th 508, 512 [66 Cal.Rptr.2d 431, 941 P.2d 64].) On its face, “[a]s used throughout this Code,” as employed in section 1170.18, subdivision (c), clearly and unambiguously refers to the Penal Code, not merely section 1170.18 or the other provisions contained in Proposition 47. (See People v. Bucchierre (1943) 57 Cal.App.2d 153, 164-165 [134 P.2d 505]; see also Marshall v. Pasadena Unified School Dist. (2004) 119 Cal.App.4th 1241, 1254-1255 [15 Cal.Rptr.3d 344]; People v. Vasquez (1992) 7 Cal.App.4th 763, 766 [9 Cal.Rptr.2d 255].) This does not mean, however, that the definition contained in section 1170.18, subdivision (c) must inexorably be read into section 1170.126, subdivision (1). (Cf. Marshall v. Pasadena Unified School Dist., supra, 119 Cal.App.4th at p. 1255.) “The literal language of a statute does not prevail if it conflicts with the lawmakers’ intent .... [Citations.]” (People v. Osuna, supra, 225 Cal.App.4th at pp. 1033-1034.) “ ‘The apparent purpose of a statute will not be sacrificed to a literal construction.’ [Citation.]” (Cossack v. City of Los Angeles (1974) 11 Cal.3d 726, 733 [114 Cal.Rptr. 460, 523 P.2d 260].) Rather, “the literal meaning of a statute must be in accord with its purpose.” (People v. Mohammed (2008) 162 Cal.App.4th 920, 927 [76 Cal.Rptr.3d 372].) “[I]t is settled that the language of a statute should not be given a literal meaning if doing so would result in absurd consequences that the [voters] did not intend” (In re Michele D. (2002) 29 Cal.4th 600, 606 [128 Cal.Rptr.2d 92, 59 P.3d 164]), or would “frustrate[] the manifest purposes of the legislation as a whole . . . .” (People v. Williams (1992) 10 Cal.App.4th 1389, 1393 [13 Cal.Rptr.2d 379].) “To this extent, therefore, intent prevails over the letter of the law and the letter will be read in accordance with the spirit of the enactment. [Citation.]” (In re Michele D., supra, 29 Cal.4th at p. 606; accord, People v. Ledesma (1997) 16 Cal.4th 90, 95 [65 Cal.Rptr.2d 610, 939 P.2d 1310].)
Thus, “ ‘we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]’ [Citation.] We also ‘ “refer to other indicia of the voters’ intent, particularly the analyses and arguments contained in the official ballot pamphlet.” [Citation.]’ [Citation.]” (People v. Osuna, supra, 225 Cal.App.4th at p. 1034.) We consider “the consequences that will flow from a particular interpretation” (Dyna-Med, Inc. v. Fair Employment & Housing Com., supra, 43 Cal.3d at p. 1387), as well as “the wider historical circumstances” of the statute’s or statutes’ *907 enactment (ibid.). “ ‘Using these extrinsic aids, we “select the construction that comports most closely with the apparent intent of the [electorate], with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.” [Citation.]’ [Citation.]” (People v. Osuna, supra, 225 Cal.App.4th at pp. 1034-1035.)
Proposition 47 and the Act address related, but not identical, subjects. As we explain, reading them together, and considering section 1170.18, subdivision (c) in the context of the statutory framework as a whole (see People v. Acosta, supra, 29 Cal.4th at p. 112; Lakin v. Watkins Associated Industries (1993) 6 Cal.4th 644, 658-659 [25 Cal.Rptr.2d 109, 863 P.2d 179]; In re Cindy B. (1987) 192 Cal.App.3d 111, 781 [237 Cal.Rptr. 677]), we conclude its literal meaning does not comport with the purpose of the Act, and applying it to resentencing proceedings under the Act would frustrate, rather than promote, that purpose and the intent of the electorate in enacting both initiative measures (see People v. Disibio (1992) 7 Cal.App.4th Supp. 1, 5 [9 Cal.Rptr.2d 20]).
As is evidenced by its title, the Act was aimed solely at revising the three strikes law. That law, as originally enacted by the Legislature, was described by us as follows:
“Under the three strikes law, defendants are punished not just for their current offense but for their recidivism. Recidivism in the commission of multiple felonies poses a danger to society justifying the imposition of longer sentences for subsequent offenses. [Citation.] The primary goals of recidivist statutes are: ‘. . . to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person’s most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes. Like the line dividing felony theft from petty larceny, the point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction.’ [Citation.]
“By enacting the three strikes law, the Legislature acknowledged the will of Californians that the goals of retribution, deterrence, and incapacitation be given precedence in determining the appropriate punishment for crimes. Further, those goals were best achieved by ensuring ‘longer prison sentences *908 and greater punishment’ for second and third ‘strikers.’ ” (People v. Cooper (1996) 43 Cal.App.4th 815, 823-824 [51 Cal.Rptr.2d 106].)[24]
A few months before the November 6, 2012, general election, the California Supreme Court observed: “One aspect of the [three strikes] law that has proven controversial is that the lengthy punishment prescribed by the law may be imposed not only when ... a defendant [who has previously been convicted of one or more serious or violent felonies] is convicted of another serious or violent felony but also when he or she is convicted of any offense that is categorized under California law as a felony. This is so even when the current, so-called triggering, offense is nonviolent and may be widely perceived as relatively minor. [Citations.]” (In re Coley, supra, 55 Cal.4th at pp. 528-529.)
Clearly, by approving the Act, voters resolved this controversy in favor of strike offenders. Thus, one of the “Findings and Declarations” of the Act stated the Act would “[r]estore the Three Strikes law to the public’s original understanding by requiring life sentences only when a defendant’s current conviction is for a violent or serious crime.” (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) text of Prop. 36, § 1, p. 105.)[25] Nowhere, however, do the ballot materials for the Act suggest voters intended essentially to release existing third strike offenders in all but the most egregious cases, as would be the result if the definition of “ ‘unreasonable risk of danger to public safety’ ” contained in section 1170.18, subdivision (c) were engrafted onto resentenc-ing proceedings under section 1170.126, subdivision (1). That voters did not intend such a result is amply demonstrated by the fact an indeterminate life term remains mandatory under the Act for a wide range of current offenses even if the offender does not have a prior conviction for a “super strike” offense (§§ 667, subd. (e)(2), 1170.12, subd. (c)(2)), and that an inmate is rendered ineligible for resentencing under section 1170.126 for an array of reasons beyond his or her having suffered such a prior conviction (§ 1170.126, subd. (e)(2)).
The Act clearly placed public safety above the cost savings likely to accrue as a result of its enactment. Thus, uncodified section 7 of the Act provides: *909 “This act is an exercise of the public power of the people of the State of California for the protection of the health, safety, and welfare of the people of the State of California, and shall be liberally construed to effectuate those purposes.” (Voter Information Guide, Gen. Elec., supra, text of Prop. 36, p. 110, some italics omitted.) As we explained in People v. Osuna, supra, 225 Cal.App.4th at page 1036, “Although the Act ‘diluted’ the three strikes law somewhat [citation], ‘[enhancing public safety was a key purpose of the Act’ [citation].”
In contrast, Proposition 47—while titled “the Safe Neighborhoods and Schools Act”—emphasized monetary savings. The “Findings and Declarations” state: “The people of the State of California find and declare as follows: [¶] The people enact the Safe Neighborhoods and Schools Act to ensure that prison spending is focused on violent and serious offenses, to maximize alternatives for nonserious, nonviolent crime, and to invest the savings generated from this act into prevention and support programs in K-12 schools, victim services, and mental health and drug treatment. This act ensures that sentences for people convicted of dangerous crimes like rape, murder, and child molestation are not changed.” (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 2, p. 70.) Uncodified section 15 of the measure provides: “This act shall be broadly construed to accomplish its purposes,” while uncodified section 18 states: “This act shall be liberally construed to effectuate its purposes.” (Voter Information Guide, Gen. Elec., supra, text of Prop. 47, p. 74.) Proposition 47 requires misdemeanor sentences for various drug possession and property offenses, unless the perpetrator has a prior conviction for a “super strike” offense or for an offense requiring sex offender registration pursuant to section 290, subdivision (c). (Health & Saf. Code, §§ 11350, subd. (a), 11357, subd. (a), 11377, subd. (a); Pen. Code, §§ 459.5, subd. (a), 473, subd. (b), 476a, subd. (b), 490.2, subd. (a), 496, subd. (a), 666, subd. (b).) Section 1170.18 renders ineligible for resentencing only those inmates whose current offense would now be a misdemeanor, but who have a prior conviction for a “super strike” offense or for an offense requiring sex offender registration pursuant to section 290, subdivision (c). (§ 1170.18, subds. (a), (i).)
Nowhere in the ballot materials for Proposition 47 were voters given any indication that initiative, which dealt with offenders whose current convictions would now be misdemeanors rather than felonies, had any impact on Proposition 36—enacted a scant two years earlier—which dealt with offenders whose current convictions would still be felonies, albeit not third strikes. For instance, the “Official Title and Summary” stated, in pertinent part, that Proposition 47 would “[r]equire[] resentencing for persons serving felony sentences for these offenses [i.e., offenses that require misdemeanor sentences under the measure,] unless court finds unreasonable public safety risk.” (Voter Information Guide, Gen. Elec., supra, official title and summary of Prop. 47, *910 p. 34.) In explaining what Proposition 47 would do, the Legislative Analyst stated: “This measure reduces penalties for certain offenders convicted of nonserious and nonviolent property and drug crimes. The measure also allows certain offenders who have been previously convicted of such crimes to apply for reduced sentences.” (Voter Information Guide, Gen. Elec., supra, analysis of Prop. 47 by Legis. Analyst, p. 35, italics added.) With respect to the resentencing provision, the Legislative Analyst explained: “This measure allows offenders currently serving felony sentences for the above crimes [i.e., grand theft, shoplifting, receiving stolen property, writing bad checks, check forgery, and drug possession] to apply to have their felony sentences reduced to misdemeanor sentences. In addition, certain offenders who have already completed a sentence for a felony that the measure changes could apply to the court to have their felony conviction changed to a misdemeanor. However, no offender who has committed a specified severe crime could be resentenced or have their conviction changed. In addition, the measure states that a court is not required to resentence an offender currently serving a felony sentence if the court finds it likely that the offender will commit a specified severe crime. Offenders who are resentenced would be required to be on state parole for one year, unless the judge chooses to remove that requirement.” (Id. at p. 36, italics added.)
Similarly, the arguments in favor of and against Proposition 47 spoke in terms solely of Proposition 47, and never mentioned the Act. The “Argument in Favor of Proposition 47” talked of prioritizing serious and violent crime so as to stop wasting prison space “on petty crimes,” stop “wasting money on warehousing people in prisons for nonviolent petty crimes,” and stop California’s overcrowded prisons from “incarcerating too many people convicted of low-level, nonviolent offenses.” (Voter Information Guide, Gen. Elec., supra, argument in favor of Prop. 47, p. 38.) The “Rebuttal to Argument Against Proposition 47” reiterated these themes, and never suggested Proposition 47 would have any effect on resentencing under the Act. (See Voter Information Guide, Gen. Elec., supra, rebuttal to argument against Prop. 47, p. 39.) Although the “Rebuttal to Argument in Favor of Proposition 47” asserted 10,000 inmates would be eligible for early release under the measure, and that many of them had prior convictions “for serious crimes, such as assault, robbery and home burglary” (Voter Information Guide, Gen. Elec., supra, rebuttal to argument in favor of Prop. 47, p. 38), it contained no suggestion the early release provisions would extend to inmates whose current offenses remained felonies under the Act. The same is true of the discussion of resentencing contained in the “Argument Against Proposition 47.” (Voter Information Guide, Gen. Elec., supra, argument against Prop. 47, p. 39.)
In light of the foregoing, we cannot reasonably conclude voters intended the definition of “ ‘unreasonable risk of danger to public safety’ ” contained in section 1170.18, subdivision (c) to apply to that phrase as it *911 appears in section 1170.126, subdivision (1), despite the former section’s preamble, “As used throughout this Code . . . .” Voters cannot intend something of which they are unaware.
We are mindful “it has long been settled that ‘[t]he enacting body is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted’ [citation], ‘and to have enacted or amended a statute in light thereof’ [citation], ‘This principle applies to legislation enacted by initiative. [Citation.]’ [Citation.]” (People v. Superior Court (Cervantes), supra, 225 Cal.App.4th at p. 1015; accord, In re Lance W. (1985) 37 Cal.3d 873, 890, fn. 11 [210 Cal.Rptr. 631, 694 P.2d 744].) Thus, we presume voters were aware “unreasonable risk of danger to public safety,” as used in section 1170.126, subdivision (1), had been judicially construed as not being impermissibly vague, but as nevertheless having no fixed definition. (People v. Garcia (2014) 230 Cal.App.4th 763, 769-770 [178 Cal.Rptr.3d 883]; People v. Flores, supra, 227 Cal.App.4th at p. 1075.) Because nowhere in the ballot materials for Proposition 47 was it called to voters’ attention the definition of the phrase contained in section 1170.18, subdivision (c) would apply to resentencing proceedings under the Act, we simply cannot conclude voters intended Proposition 47 to alter the Act in that respect.[26] Voters are not asked or presumed to be able to discern all potential effects of a proposed initiative measure; this is why they are provided with voter information guides containing not only the actual text of such a measure, but also a neutral explanation and analysis by the Legislative Analyst and arguments in support of and in opposition to the measure. As we have already observed, none of those materials so much as hinted that Proposition 47 could have the slightest effect on resentencing under the Act. (Cf. Marshall v. Pasadena Unified School Dist., supra, 119 Cal.App.4th at pp. 1255-1256 [legislative history of enactment included information bill would add definition of particular term to Pub. Contract Code].)[27]
*912 Nor can we infer an intent to extend section 1170.18, subdivision (c)’s definition to proceedings under section 1170.126 because the phrase in question only appears in those sections of the Penal Code. The only resen-tencing mentioned in the Proposition 47 ballot materials was resentencing for inmates whose current offenses would be reduced to misdemeanors, not those who would still warrant second strike felony terms. There is a huge difference, both legally and in public safety risked, between someone with multiple prior serious and/or violent felony convictions whose current offense is (or would be, if committed today) a misdemeanor, and someone whose current offense is a felony. Accordingly, treating the two groups differently for resentencing purposes does not lead to absurd results, but rather is eminently logical.
We recognize it is an established rule of statutory construction “that when statutes are in pari materia similar phrases appearing in each should be given like meanings. [Citations.]” (People v. Caudillo (1978) 21 Cal.3d 562, 585 [146 Cal.Rptr. 859, 580 P.2d 274], overruled on another ground in People v. Martinez (1999) 20 Cal.4th 225, 229, 237, fn. 6 [83 Cal.Rptr.2d 533, 973 P.2d 512] and disapproved on another ground in People v. Escobar (1992) 3 Cal.4th 740, 749-751 & fn. 5 [12 Cal.Rptr.2d 586, 837 P.2d 1100]; see Robbins v. O. R. R. Company (1867) 32 Cal. 472, 474.) We question whether Proposition 36 and Proposition 47 are truly in pari materia: That phrase means “[o]n the same subject; relating to the same matter” (Black’s Law Diet. (9th ed. 2009) p. 862), and the two measures (albeit with some overlap) address different levels of offenses and offenders. (19) In any event, “canons of statutory construction are merely aids to ascertaining probable legislative intent” (Stone v. Superior Court (1982) 31 Cal.3d 503, 521, fn. 10 [183 Cal.Rptr. 647, 646 P.2d 809]); they are “mere guides and will not be applied so as to defeat the underlying legislative intent otherwise determined [citation]” (Dyna-Med, Inc. v. Fcdr Employment & Housing Com., supra, 43 Cal.3d at p. 1391).
The Act was intended to reform the three strikes law while keeping intact that scheme’s core commitment to public safety. Allowing trial courts broad discretion to determine whether resentencing an eligible petitioner under the Act “would pose an unreasonable risk of danger to public safety” (§ 1170.126, subd. (1)) clearly furthers the Act’s purpose. Whatever the wisdom of Proposition 47’s policy of nearly universal resentencing where misdemeanants are concerned—and “[i]t is not for us to gainsay the wisdom of this legislahve choice” (Bernard v. Foley (2006) 39 Cal.4th 794, 813 [47 Cal.Rptr.3d 248, 139 P.3d 1196])—constraining that discretion so that all but *913 the worst felony offenders are released manifestly does not, nor does it comport with the voters’ intent in enacting either measure. Accordingly, Proposition 47 has no effect on defendant’s petition for resentencing under the Act.[28]
E. The focus in a section 1170.126, subdivision (f) analysis is on whether the petitioner currently poses an unreasonable risk of danger to public safety.
Defendant contends there must be a “logical nexus” between the factors considered in the trial court’s decision and current dangerousness. In support, he relies, in part, on parole cases.
In discussing the “some evidence” standard applicable in parole cases, the California Supreme Court has stated: “This standard is unquestionably deferential, but certainly is not toothless, and ‘due consideration’ of the specified factors requires more than rote recitation of the relevant factors with no reasoning establishing a rational nexus between those factors and the necessary basis for the ultimate decision—the determination of current dangerousness.” (In re Lawrence, supra, 44 Cal.4th at p. 1210.)
Although we decline to decide how and to what extent parole cases inform the decision whether to resentence a petitioner under the Act or our review of such a decision, we agree with defendant that the proper focus is on whether the petitioner currently poses an unreasonable risk of danger to public safety. (Cf. In re Shaputis (2008) 44 Cal.4th 1241, 1254 [82 Cal.Rptr.3d *914 213, 190 P.3d 573]; In re Lawrence, supra, 44 Cal.4th at p. 1214.) We also agree a trial court may properly deny resentencing under the Act based solely on immutable facts such as a petitioner’s criminal history "only if those facts support the ultimate conclusion that an inmate continues to pose an unreasonable risk to public safety. [Citation.]” (In re Lawrence, supra, at p. 1221.) “ ‘[T]he relevant inquiry is whether [a petitioner’s prior criminal and/or disciplinary history], when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years [later]. This inquiry is ... an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate’s psychological or mental attitude. [Citation.]’ [Citation.]” (In re Shaputis, supra, 44 Cal.4th at pp. 1254-1255.)
II
The Trial Court’s Ruling*

DISPOSITION
The order denying the petition is affirmed.
Smith, J., concurred.

 All statutory references are to the Penal Code unless otherwise stated.

 See footnote, ante, page 886.

 “An inmate is eligible for resentencing if: [¶] (1) The inmate is serving an indeterminate term of life imprisonment imposed pursuant to paragraph (2) of subdivision (e) of Section 667 or subdivision (c) of Section 1170.12 for a conviction of a felony or felonies that are not defined as serious and/or violent felonies by subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7. [¶] (2) The inmate’s current sentence was not imposed for any of the offenses appealing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12. [¶] (3) The inmate has no prior convictions for any of the offenses appealing in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clause (iv) of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12.” (§ 1170.126, subd. (e).)

 The People do not dispute defendant’s claim the burden of proof lies with the prosecution. (E.g., People v. Flores (2014) 227 Cal.App.4th 1070, 1075-1076 [174 Cal.Rptr.3d 390]; People v. Superior Court (Kaulick) (2013) 215 Cal.App.4th 1279, 1301, fn. 25 [155 Cal.Rptr.3d 856] (Kaulick).) The trial court here expressly placed the burden on the People.

 Neither Descamps v. United States (2013) 570 U.S._[186 L.Ed.2d 438, 133 S.Ct. 2276] nor Pepper v. United States (2011) 562 U.S. 476 [179 L.Ed.2d 196, 131 S.Ct. 1229] undermines Dillon or Kaulick’a reliance thereon. Unlike Dillon, Descamps dealt with judicial *898 factfinding concerning a prior conviction used to enhance a sentence (Descamps, supra, 570 U.S. at pp. - [133 S.Ct. at pp. 2281-2282]), while Pepper involved a plenary resentencing after the defendant’s sentence had been set aside on appeal (Pepper, supra, 562 U.S. atp. 481).

 As noted, ante, we have previously discussed Kaulick in the context of the initial determination whether an inmate is eligible for resentencing under the Act. (Blakely, supra, 225 Cal.App.4th at pp. 1058, 1060-1061; People v. Osuna, supra, 225 Cal.App.4th at pp. 1033, 1039-1040.) Nothing we say here should be taken as disagreement with or modification of those opinions. We deal here with a different aspect of the retrospective portion of the Act and a subject not before us in our prior cases.

 We recognize that in the case of people who are in voluntarily committed as narcotics addicts or for analogous reasons, the California Supreme Court has found the appropriate standard of proof to be beyond a reasonable doubt. (See, e.g.. People v. Thomas (1977) 19 Cal.3d 630, 637-638 [139 Cal.Rptr. 594, 566 P.2d 228].) Defendant received the protections of that standard of proof (and the right to a jury trial) at the time he was convicted of his commitment offense and was found to have suffered his prior strike convictions. (People v. Nguyen (2009) 46 Cal.4th 1007, 1015 [95 Cal.Rptr.3d 615, 209 P.3d 946]; People v. Towers (2007) 150 Cal.App.4th 1273, 1277 [57 Cal.Rptr.3d 530].)

 The determination of the appropriate penalty in a capital case “ ‘is “essentially moral and normative [citation], and therefore . . . there is no burden of proof or burden of persuasion.” ’ ” (People v. McKinzie (2012) 54 Cal.4th 1302, 1362 [144 Cal.Rptr.3d 427, 281 P.3d 412], disapproved on another ground in People v. Scott (2015) 61 Cal.4th 363, 391, fn. 3 [188 Cal.Rptr.3d 328, 349 P.3d 1028].)

 After Cunningham concluded the DSL violated a defendant’s Sixth Amendment right to a jury trial (Cunningham, supra. 549 U.S. at p. 281), the Legislature amended section 1170 so that “(1) the middle term is no longer the presumptive term absent aggravating or mitigating facts found by the trial judge; and (2) a trial judge has the discretion to impose an upper, middle or lower term based on reasons he or she states.” (People v. Wilson (2008) 164 Cal.App.4th 988, 992 [79 Cal.Rptr.3d 631].) Subdivision (b) of section 1170 states the court “shall select the term which, in the court’s discretion, best serves the interests of justice.”

 We reject defendant’s claim that if there need only be substantial evidence of the underlying facts, then review of the ultimate dangerousness determination for abuse of discretion is no more stringent than the highly deferential “some evidence” standard applicable to review of executive branch decisions in parole cases. (See In re Rosenkrantz (2002) 29 Cal.4th 616, 658, 665 [128 Cal.Rptr.2d 104, 59 P.3d 174].) Whatever the similarities between the “abuse of discretion” and “some evidence” standards (compare People v. Giordano (2007) 42 Cal.4th 644, 663 [68 Cal.Rptr.3d 51, 170 P.3d 623] [abuse of discretion standard is “ ‘deferential’ ” but “ ‘not empty’ ”] with In re Lawrence, supra. 44 Cal.4th at p. 1210 [“some evidence” standard is “unquestionably deferential” but “not toothless”]), examining the underlying facts for substantial evidence requires us to “ ‘review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the [challenged fact by a preponderance of the evidence], [Citations.]’ [Citation.] We resolve all conflicts in the *901 evidence and questions of credibility in favor of the [finding], and we indulge every reasonable inference the [trier of fact] could draw from the evidence. [Citation.]” (People v. Wong (2010) 186 Cal.App.4th 1433, 1444 [113 Cal.Rptr.3d 384].) Moreover, as we have observed, the language of section 1170.126, subdivisions (f) and (g) expressly allocates to the trial court’s discretion the ultimate determination of dangerousness. A review of the trial court’s exercise of discretion requires a determination whether that court reasonably and nonarbitrarily found resentencing the petitioner would pose an unreasonable risk of danger to public safety, and not merely a review of whether evidence established the facts of that inmate’s criminal and disciplinary history. (See People v. Williams, supra. 17 Cal.4th at p. 162; People v. Rodrigues, supra. 8 Cal.4th at pp. 1124-1125.)

 Section 190.5, subdivision (b) provides, in pertinent part: “The penalty for a defendant found guilty of murder in the first degree, in any case in which one or more special circumstances . . . has been found to be true .... who was 16 years of age or older and under the age of 18 years at the time of the commission of the crime, shall be confinement in the state prison for life without the possibility of parole or, at the discretion of the court, 25 years to life.”

 Because a trial court can deny resentencing under section 1170.126, subdivision (f) only upon a finding of unreasonable risk of danger to public safety, a trial court would abuse its discretion, as in a Romero situation, by refusing to resentence a petitioner because of antipathy toward the Act or a personal belief a particular' defendant deserved an indeterminate term for reasons other than dangerousness. (See People v. Williams, supra. 17 Cal.4th at pp. 159, 161.)

 Proposition 47 also created a process whereby eligible persons who have already completed their' sentences may have the particular' conviction or convictions designated as misdemeanors. (§ 1170.18, subds. (f), (g).)

 It appears that a number of inmates will be eligible to seek resentencing under both the Act and Proposition 47. Such an inmate need not wait to file a petition under Proposition 47 until the trial court’s ruling on the inmate’s petition under the Act is final. A trial court is not divested of jurisdiction over a Proposition 47 petition by the fact a petition under the Act is pending, whether in a trial court or a Court of Appeal, with respect to the same inmate. (Cf. People v. Mayfield (1993) 5 Cal.4th 220, 222-227 [19 Cal.Rptr.2d 877, 852 P.2d 372]; People v. Johnson (1992) 3 Cal.4th 1183, 1256-1257 [14 Cal.Rptr.2d 702, 842 P.2d 1]; People v. Alanis (2008) 158 Cal.App.4th 1467, 1472-1473 [71 Cal.Rptr.3d 139].) While the general rule is that “an appeal from an order in a criminal case removes the subject matter of that order from the jurisdiction of the trial court [citations] . . .” (Anderson v. Superior Court (1967) 66 Cal.2d 863, 865 [59 Cal.Rptr. 426, 428 P.2d 290]), the subject matter of a ruling on a petition under the Act is legally independent from a petition under Proposition 47 (see People v. Superior Court (Gregory) (2005) 129 Cal.App.4th 324, 332 [28 Cal.Rptr.3d 276]).

 The foregoing applies equally to the three strikes initiative measure that added section 1170.12 to the Penal Code. The following statement of intent preceded the text of the statute in Proposition 184, which was approved by voters on November 8, 1994: “ ‘It is the intent of the People of the State of California in enacting this measure to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses.’ ” (Ballot Pamp., Gen. Elec. (Nov. 8, 1994) p. 64.)

 The voter information guides for both the November 6, 2012, general election (which contains Prop. 36) and the November 4, 2014, general election (which contains Prop. 47) can be accessed at <http://www.sos.ca.gov/elections/voting-resources/voter-information-guides/> (as of Oct. 27, 2016).

 That one of the authors of both measures may have so intended (St. John & Gerber, Prop. 47 jolts landscape of California justice system (Nov. 5, 2014) Los Angeles Times <http://www.latimes.com/local/politics/la-me-ff-pol-proposition47-20141106-story.html> [as of Oct. 27, 2016]; see Stanford Law School Directory—Michael Romano <https://law.stanford. edu/directory/michael-romano/> [as of Oct. 27, 2016]) is, in light of the information actually conveyed to voters, of no import (see People v. Garcia (2002) 28 Cal.4th 1166, 1175-1176, fn. 5 [124 Cal.Rptr.2d 464, 52 P.3d 648]; Kaufman & Broad Communities. Inc. v. Performance Plastering. Inc. (2005) 133 Cal.App.4th 26, 30 [34 Cal.Rptr.3d 520]).
The concurring opinion cites People v. Cordova (2016) 248 Cal.App.4th 543, 560-564 [203 Cal.Rptr.3d 700], review granted August 31, 2016, S236179, as demonstrating the question whether Proposition 47 would affect petitions under the Act was widely debated in the state prior to the election. (Cone. opn. of Peña, J„ post, at pp. 917-918.) We are aware of no California Supreme Court authority identifying Internet and media sources as reliable bases for ascertaining voters’ intent.

 For the same reasons, we reject any suggestion the definition contained in section 1170.18, subdivision (c) was intended to clarify the true meaning of “unreasonable risk of danger to *912 public safety” as used in section 1170.126, subdivision (f). (Cf. Re-Open Rambla, Inc. v. Board of Supervisors (1995) 39 Cal.App.4th 1499, 1511 [46 Cal.Rptr.2d 822]; In re Connie M. (1986) 176 Cal.App.3d 1225, 1238 [222 Cal.Rptr. 673].)

 Were we to find section 1170.18, subdivision (c) modifies section 1170.126, subdivision (f), we would conclude it does not do so retroactively. Section 3—“No part of [the Penal Code] is retroactive, unless expressly so declared”—is the default rule. (People v. Brown (2012) 54 Cal.4th 314, 319 [142 Cal.Rptr.3d 824, 278 P.3d 1182].) In re Estrada (1965) 63 Cal.2d 740, 744-745, 747-748 [48 Cal.Rptr. 172, 408 P.2d 948], which stands for the proposition that absent a “saving clause” providing for prospective application, a statute lessening punishment is presumed to apply to all cases not yet final on the statute’s effective date, does not control, because applying the definition of “ ‘unreasonable risk of danger to public safety’ ” contained in section 1170.18, subdivision (c) to petitions for resentencing under the Act does not reduce punishment for a particular criminal offense. (See People v. Brown, supra. 54 Cal.4th at pp. 324-325.)
We believe, however, that a finding of nonretroactivity inexorably leads to the possibility of prospective-only application, and prospective-only application of Proposition 47’s definition to resentencing petitions under the Act would raise serious, perhaps insurmountable, equal protection issues. (Indeed, the parties here engage in a spirited argument concerning equal protection.) “Mindful of the serious constitutional questions that might arise were we to accept a literal construction of the statutory language, and of our obligation wherever possible both to carry out the intent of the electorate and to construe statutes so as to preserve their' constitutionality [citations]” (People v. Skinner (1985) 39 Cal.3d 765, 769 [217 Cal.Rptr. 685, 704 P.2d 752]), we rest our holding on the reasoning set out in our opinion, ante.

See footnote, ante, page 886.