Filed 3/18/21  P. v. Piper CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CHARLES MAURICE PIPER,<br><br>Defendant and Appellant. | B301332<br><br>(Los Angeles County<br>Super. Ct. No. NA047666) |

APPEAL from an order of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Affirmed.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey,

Senior Assistant Attorney General, and Michael J. Wise, Deputy Attorney General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Appellant Charles Maurice Piper was convicted of a series of crimes between 1991 and 2001, including robbery, arson of an inhabited property, attempted arson, criminal threats, battery on a peace officer, and -- most recently -- unlawful possession of ammunition and evasion of a police officer.  Since 2001, he has been serving concurrent prison terms of 25 years to life, imposed under the three strikes law.  In 2013, appellant filed a petition for resentencing under Penal Code section 1170.126, which had recently been enacted by Proposition 36, the Three Strikes Reform Act of 2012.  The trial court initially denied the petition, concluding that appellant was ineligible for resentencing.  We reversed, and remanded with instructions to the court to exercise its discretion in determining whether appellant was suitable for resentencing, i.e., whether his resentencing would pose an unreasonable risk of danger to public safety.  (*People v. Piper* (2018) 25 Cal.App.5th 1007, 1015-1016.)

On remand, the court held an evidentiary hearing on appellant's suitability for resentencing, receiving numerous exhibits from both parties.  The People submitted evidence of appellant's prior crimes, his California Department of Corrections and Rehabilitation (CDCR) placement scores, and nine rules violations for which appellant had been

disciplined by CDCR.  The rules violations included appellant's active participation, at the age of 40, in a 2017 prison riot, during which he punched one victim in the back of the head and joined three other men in assaulting a second victim.  Appellant submitted a number of corrections officers' reports that appellant had been well-behaved under their observation, records of his completion of educational programming (mostly after he filed his petition for resentencing), and letters of support from family members, friends, and community members.

The court denied the petition.  In an 11-page memorandum of decision, the court recognized that the burden of proof was on the People, and -- with extensive references to the parties' exhibits -- considered the relevant factors set forth in Penal Code section 1170.126.  Principally relying on appellant's history of violating rules in prison and committing dangerous crimes when free from incarceration, the court determined that resentencing appellant would pose an unreasonable risk of danger to public safety.

On appeal, appellant contends the court abused its discretion in denying his petition.  We disagree and affirm. The court's decision was well within the bounds of reason, particularly considering appellant's history of dangerous crimes and active participation in the 2017 prison riot.

# BACKGROUND

## A. *Appellant's Prior and Instant Convictions*

In June 1991, a juvenile court found appellant had committed robbery (Pen. Code, § 211), and placed him in a youth home for nine months.  In 1993, in connection with appellant's threatening a victim's life and throwing a burning Christmas tree through a window of the victim's home, appellant pled no contest to one count of arson of an inhabited property (*id.*, § 451, subd. (b)), one count of attempted arson (*id.*, § 455, subd. (a)), and four counts of criminal threats (*id.*, § 422, subd. (a)).  He was sentenced to eight years in prison.  On February 25, 1998, he was released on parole.

On March 10, 1998 (about two weeks after his release on parole), appellant fled from an approaching police officer, climbed a 12-foot fence, and kicked the pursuing officer off the fence and onto the ground.  He was convicted of battery on a peace officer.  (Pen. Code, § 243, subd. (c)(2).)  He was sentenced to two years and eight months in prison, and released on parole in March 2000.

In January 2001, less than a year after his release and while still on parole, appellant was stopped by a police officer while driving.[1]  After backup arrived and the officer

---

[1]     The facts regarding appellant's January 2001 offenses are taken from our unpublished 2003 opinion affirming the judgment and our published 2018 opinion reversing the initial denial of the petition for resentencing.

4

directed appellant to exit the car, appellant abruptly drove off, pursued by two police cars. Appellant drove on the wrong side of the road, went through stop signs and a red light, and drove about 40 to 45 miles per hour in a 25-mile-per-hour zone. He was eventually apprehended and found to be in possession of eight live rounds of ammunition.

A jury convicted appellant of being a felon in possession of ammunition (former Pen. Code, § 12316, subd. (b)(1)) and evading a police officer by driving with a willful or wanton disregard for the safety of persons or property (Veh. Code, § 2800.2, subd. (a)).[2] The trial court found appellant had incurred five prior convictions for serious or violent felonies within the meaning of the three strikes law. The court sentenced appellant to two concurrent prison terms of 25 years to life. We affirmed. (*People v. Piper* (Oct. 28, 2003, B162352) [nonpub. opn.].)

### B. *Prior Proceedings on Appellant's Petition*

In January 2013, appellant filed a petition for resentencing under Penal Code section 1170.126. After an evidentiary hearing, the trial court determined the People had proven appellant was armed with a firearm during the commission of his January 2001 offenses, rendering him ineligible for resentencing. In 2018, we reversed, concluding

---

[2] The jury acquitted appellant of possessing a firearm, and found not true an allegation that appellant was armed with a firearm while evading the police.

5

the jury's verdict and findings precluded a determination that appellant was armed with a firearm. (*People v. Piper*, *supra*, 25 Cal.App.5th at 1015-1016.) We remanded with instructions to the trial court to exercise its discretion in determining whether appellant was suitable for resentencing, i.e., whether his resentencing would pose an unreasonable risk of danger to public safety. (*Id.* at 1016.)

### C. *The Suitability Hearing*

In June 2019, the court held an evidentiary hearing on appellant's suitability for resentencing. No witnesses testified, but both parties moved numerous exhibits into evidence.

### 1. *Prosecution Evidence*

The People submitted records of appellant's prior convictions, which (as described in more detail above) included convictions for robbery, arson of an inhabited property, attempted arson, criminal threats, and battery on a peace officer. The People further submitted nine rules violation reports (RVRs) documenting discipline imposed on appellant by CDCR for violating various rules.

In January 2017, according to one RVR, appellant participated in a prison riot.[3] Surveillance videos showed

---

[3]     A riot, as defined by the statute cited in the RVR, is "[a]ny use of force or violence, disturbing the public peace, or any threat to use force or violence, if accompanied by immediate power of
*(Fn. is continued on the next page.)*

that immediately after two prisoners began to fight each other in a visiting room where appellant was present, appellant repeatedly punched another prisoner "in the back of the head and upper torso, knocking him to the ground." Appellant then joined three other men in punching a different prisoner. Shortly thereafter, corrections officers used pepper spray to quell the riot. When charged with participation in the riot, appellant denied that he had punched anyone. At the time of the riot, he was 40 years old, and his petition for resentencing was pending.

Appellant committed four other rules violations during the pendency of his petition for resentencing. In May 2014, appellant reached into a visitor's skirt with both hands and grabbed her buttocks. In June 2014, he possessed three contraband cell phones. In August 2017, he possessed two more contraband cell phones. Finally, in December 2017, appellant conspired with a visitor to smuggle marijuana into the prison.[4]

execution, by two or more persons acting together, and without authority of law . . . ." (Pen. Code, § 404, subd. (a).)

[4] Appellant also committed the following rules violations before filing his petition: (1) in April 2004, appellant engaged in mutual combat with his cell mate; (2) in May 2004, he verbally encouraged other prisoners to join him in disobeying a corrections officer's order to return to their cells; (3) in October 2008, he possessed a contraband cell phone; and (4) in November 2012, he publicly mocked a welding instructor's admonition to another prisoner regarding his behavior.

The People also submitted records of appellant's CDCR placement scores from 2002 to 2019.  (See Cal. Code Regs., tit. 15, § 3375 subd. (d) ["a higher placement score indicates greater security control needs"].)  Appellant's placement score gradually dropped from 73 to 27 between 2002 and 2013 (the year he filed his petition), rose to 35 in 2015, and dropped to 21 in 2016.  As a result of his rules violations in 2017 (participation in the riot, possession of contraband cell phones, and conspiracy to smuggle marijuana into the prison), his score rose to 43 in 2018.  His score was 39 at the time of the June 2019 suitability hearing.

## 2. *Defense Evidence*

Appellant submitted eight "laudatory chrono[s]" signed by corrections officers, four signed in December 2012 and four signed in November 2018.[5]  The officers who signed in 2012 attested that they had observed appellant for various periods of time (ranging from three to seven years), during which appellant had been polite to staff and had not presented as a management concern.  The officers who signed in 2018 attested that they had observed appellant for unspecified periods of time, during which appellant had been similarly well-behaved.  None of the chronos addressed or

---

[5]  Each laudatory chrono was a "General Chrono," meaning a "CDC Form 128-B (Rev. 4-74) which is used to document information about inmates and inmate behavior."  (Cal. Code Regs., tit. 15, § 3000.)

reflected awareness of appellant's criminal or disciplinary history.

Appellant also submitted records of his completion of educational programming within prison. In February 2011, before appellant filed his petition for resentencing, he completed the Centinela Desert Institute's core curriculum. In 2014, after he filed his petition, he completed various workshops on conflict resolution, and enrolled in a years-long program designed to prepare participants for ministry work.

Finally, appellant submitted letters from family members, friends, and community members (including the executive director of a nonprofit organization devoted to assisting formerly incarcerated and gang-involved people) pledging to support appellant in obtaining housing and employment upon his release.

### 3. *Counsel's Arguments*

Before hearing argument, the trial court observed that appellant's instant offenses (unlawful possession of ammunition and evading a police officer) were not egregious, and that it believed it ordinarily would grant relief on a similar record. But the court expressed concern about appellant's recent rules violations.

The prosecutor summarized appellant's criminal history, including his convictions for arson of an inhabited property and battery on a peace officer. She observed that most of appellant's educational programming had been

9

completed after he filed his petition for resentencing. She further observed that appellant's CDCR placement score had risen since 2016, which she attributed to his recent rules violations. The prosecutor pointed out that appellant had punched one victim in the back of the head and joined other men in assaulting a second victim during the 2017 prison riot, and characterized these acts as especially disturbing because they occurred in the presence of prison visitors. She acknowledged that appellant had been offered opportunities for work outside prison and had substantial offers of support from family members and others, including an offer to live with his fiancée.

Appellant's counsel implied that appellant had not actively participated in the 2017 riot, suggesting that he had been disciplined merely because CDCR typically disciplines everyone present during a riot. In response, the court observed that the relevant RVR specifically found appellant had assaulted other prisoners. Appellant's counsel claimed that appellant did so only after a prisoner had approached and threatened appellant, and that the videos cited in the RVR confirmed this. But counsel admitted he had not viewed the videos. He reminded the court of the support available to appellant upon release, the certificates of appellant's completion of educational programming, and the laudatory chronos. After the prosecutor declined to present a rebuttal, the court took the matter under submission.

### D. *The Suitability Ruling*

On August 19, 2019, the trial court determined that appellant was unsuitable for resentencing and denied his petition. In an 11-page memorandum of decision, the court recognized that the burden of proof was on the People, and reviewed the relevant statutory factors. (See Pen. Code, § 1170.126, subd. (g) [court may consider defendant's "criminal conviction history," defendant's "disciplinary record and record of rehabilitation while incarcerated," and any other relevant evidence].)

The court observed that appellant's criminal conviction history was "extensive," and that it included violent crimes, such as arson of an inhabited property and battery on a peace officer. The court further observed that appellant had "consistently violated [the requirements of] every parole or probationary period after serving a prison sentence . . . ." The court acknowledged that most of appellant's prior convictions were fairly remote, but found "there continues to be a nexus between his previous criminal history and his current risk of danger to public safety because of his very recent disciplinary history."

The court observed that appellant had been found guilty of nine rules violations, and added, "The court finds it particularly troubling that some of petitioner's most serious rules violations have occurred in the last two to five years [i.e., since 2014], a period of time after he filed his Proposition 36 petition and while awaiting his suitability hearing; a time when he should have been on his best

11

behavior." With respect to appellant's record of rehabilitation, the court observed that appellant had completed most of his educational programming after he filed his petition for resentencing, causing the court to question his sincerity, particularly in light of his recent rules violations. Even assuming appellant's sincerity, the court found the record of rehabilitation insufficient to suggest that appellant would not pose an unreasonable risk of danger to public safety if resentenced.

Finally, the court considered other factors it deemed relevant, including appellant's CDCR placement scores and age.[6] The court acknowledged that appellant's most recent placement score (39) was not extremely high, but observed that his score had increased over the previous two years, suggesting he would be unable to conform his conduct to legal requirements if released early. Citing *In re Stoneroad* (2013) 215 Cal.App.4th 596, 634 & fn. 21 and an academic article cited therein, the court observed that appellant's age (43 at the time of the suitability hearing) "typically" would be a factor in his favor, "as studies show criminality declines drastically after age 40 . . . ." But the court found this statistical generalization inapplicable to appellant in light of his recent rules violations.

---

[6]   The court identified appellant's laudatory chronos as additional relevant evidence, noting they attested to appellant's good behavior at specific times.

The court concluded, "[T]he totality of the evidence contained in the record demonstrates that resentencing Petitioner at this time would pose an unreasonable risk of danger to public safety due to his criminal history and recent disciplinary record while incarcerated.  Petitioner's recent rehabilitative programming is solid but is contradicted by his recent prison misconduct."

## DISCUSSION

Appellant contends the trial court abused its discretion in determining that resentencing him would pose an unreasonable risk of danger to public safety, rendering him unsuitable for resentencing under Penal Code section 1170.126.  We disagree.

### A. *Principles*

A trial court may deny a defendant's petition for resentencing under Proposition 36 if the court, "in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (Pen. Code, § 1170.126, subd. (f).)  In exercising this discretion, the court may consider (1) the petitioner's criminal conviction history; (2) the petitioner's "disciplinary record and record of rehabilitation while incarcerated"; and (3) any other evidence the court, in its discretion, determines to be relevant.  (*Id.*, § 1170.126, subd. (g).)  """[T]he facts upon which the court's finding of unreasonable risk is based

13

must be proven by the People by a preponderance of the evidence.""" (*People v. Piper, supra*, 25 Cal.App.5th at 1016.)

On appeal, the court's determination that resentencing would pose an unreasonable risk of danger to public safety is reviewed for an abuse of discretion.[7] (*People v. Buford* (2016) 4 Cal.App.5th 886, 895.) We will find such an abuse only if the court exercised its discretion in an arbitrary, capricious, or patently absurd manner -- in other words, in a manner falling outside the bounds of reason. (*Id.* at 895, 901.)

### B. *Analysis*

The trial court acted within its discretion in finding that resentencing appellant would pose an unreasonable risk of danger to public safety. The court reasonably relied on appellant's history of violating rules in prison and committing dangerous crimes while at liberty. Appellant's criminal history included multiple offenses involving actual or potential violence, viz., battery on a peace officer, arson of an inhabited property, attempted arson, criminal threats, and robbery. His disciplinary history included *recent* acts of violence. In 2017, at the age of 40, appellant participated in a prison riot by punching one victim in the back of the head

---

[7]  Though appellant asserts that the court's suitability determination was unsupported by substantial evidence, he does not challenge the evidentiary support for any of the factual findings underlying the determination, and he acknowledges that the determination itself is reviewed for an abuse of discretion.

and joining three other men in assaulting a second victim. These recent acts of violence supported a reasonable inference that the dangerous tendencies reflected in appellant's criminal history had survived the passage of time.

We reject appellant's challenges to the court's reliance on his participation in the 2017 riot. First, no evidence in the record supports appellant's claim that his violent acts during the riot were committed in self-defense. Appellant did not claim self-defense when charged with participation in the riot; instead, he claimed that he had not punched anyone, despite video evidence to the contrary. Indeed, the videos reportedly showed that *immediately* after two prisoners began to fight each other, appellant punched his first victim in the back of the head -- contradicting appellant's claim on appeal that he assaulted his victims only after another prisoner had approached and threatened him.[8] Second, contrary to appellant's implications, the court was not compelled to speculate that appellant's motives for his violent acts in 2017 were unique to a custodial setting. There is no evidence in the record of appellant's motives. Moreover, as noted, appellant has a history of committing

---

[8] Appellant's reliance on his counsel's representations during the suitability hearing does not assist him, as his counsel admitted he had not viewed the videos and, in any event, his counsel's representations were not evidence.

15

actually and potentially violent crimes outside any custodial setting.

We also reject appellant's contention that the court arbitrarily discounted the "most important" evidence, which appellant identifies as the laudatory chronos signed by corrections officers in 2012 and 2018. It was well within the court's discretion to give these chronos little weight in determining whether resentencing appellant would pose an unreasonable risk of danger to public safety -- an issue the chronos did not address. The chronos were based solely on the officers' personal observations of appellant at particular times, and reflected no knowledge of appellant's criminal or disciplinary history. None addressed appellant's violent participation in the 2017 riot; indeed, half were signed years before the riot. Thus, the chronos did not show the court acted arbitrarily or capriciously in finding that resentencing appellant would pose an unreasonable risk of danger to public safety, in reliance on appellant's history of dangerous behavior both inside and outside prison.

We decline to address the academic sources cited throughout appellant's briefs in support of various factual generalizations, as none of these sources were presented to the trial court. (See *People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1253 [disregarding academic literature cited by appellant: "'[s]tatements of alleged fact in the briefs on appeal which are not contained in the record and were never called to the attention of the trial court will be disregarded"].) Appellant argues that fundamental fairness

16

entitles him to rely on these sources in response to the trial court's purported reliance on academic sources.  Not so.  The court cited only one academic source, for a proposition potentially favorable to appellant, viz., the statistical generalization that criminality declines drastically after age 40.  The court's citation to a single, potentially favorable academic source does not entitle appellant to fault the court for failing to address a multitude of additional sources that he neglected to draw to the court's attention.

Appellant's non-academic citations do not assist him.  The single case he identifies as analogous -- *In re Palmer* (Sept. 13, 2018, A147177) rev. granted and opn. ordered nonpub. Jan. 16, 2019, rev. dismissed April 30, 2020, S252145 -- is unpublished and therefore may not be relied on.  (Cal. Rules of Court, rule 8.1115(a), (e)(3).)  Appellant cites other cases only for general principles that the trial court recognized and reasonably applied.

In sum, the trial court acted well within its discretion.  Its discussion of the relevant statutory factors in its memorandum of decision was thorough and reasonable.  In light of appellant's past and recent history of dangerous behavior, there was nothing arbitrary, capricious, or patently absurd in the court's determination that resentencing appellant would pose an unreasonable risk of danger to public safety.

**DISPOSITION**

The order denying appellant's petition for resentencing is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

COLLINS, J.

CURREY, J.