Filed 4/13/22  P. v. Spiller CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>THOMAS LEE SPILLER,<br><br>   Defendant and Appellant. | F082067<br><br>(Super. Ct. No. SC072765A)<br><br>**OPINION** |

-ooOoo-

## THE COURT\*

APPEAL from an order of the Superior Court of Kern County.  Michael G. Bush, Judge.

Stephanie L. Gunther, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Smith, Acting P. J., Meehan, J. and Snauffer, J.

In 1998, defendant Thomas Lee Spiller was sentenced to 25 years to life pursuant to the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)).[1] In 2013, he filed a petition to recall his sentence pursuant to the Three Strikes Reform Act of 2012 (the Act) (§ 1170.126, subd. (b)). The trial court denied his petition. We reversed and remanded. The trial court again denied defendant's petition. We reversed and remanded a second time. The trial court again denied defendant's petition, finding that defendant's release "would result in [an] unreasonable risk of danger to public safety." (Capitalization omitted.) Now, in defendant's third appeal, defendant contends the trial court abused its discretion in denying the petition. The People disagree. We affirm.

## PROCEDURAL SUMMARY[2]

"In March 1997, defendant was convicted of five counts of robbery (§ 211) and was sentenced to 10 years in prison.

"In June 1998, defendant was convicted of smuggling methamphetamine into prison (§ 4573) and conspiring to smuggle methamphetamine into prison (§ 182, subd. (a)). In addition, he was found to have suffered five prior "strike" convictions within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)). He was sentenced to 25 years to life.

"In March 2001, defendant was convicted of attempted murder (§§ 664, 187) and assault while serving a life sentence (§ 4500), with a great bodily injury enhancement (§ 12022.7). He was sentenced to a consecutive term of 45 years to life.

"On November 6, 2012, voters passed Proposition 36.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Portions of the procedural summary and factual summary are drawn from our 2016 opinion in *People v. Spiller* (2016) 2 Cal.App.5th 1014 and our 2019 unpublished opinion in *People v. Spiller* (Aug. 27, 2019, F076571). On the People's request, we take judicial notice of our case file and opinion in case No. F076571. (Evid. Code, §§ 452, subd. (d), 459, subds. (a)–(c).)

"On December 23, 2013, defendant filed a Proposition 36 petition seeking to recall his 25-year-to-life sentence on the 1998 conviction for drug smuggling and conspiracy to commit drug smuggling. The trial court denied defendant's petition, reasoning he was ineligible for resentencing because his conviction for attempted murder was a prior disqualifying conviction.

"Defendant appealed, and on August 29, 2016, we concluded his attempted murder conviction was not a prior disqualifying conviction because it did not occur before his third strike indeterminate life sentence was imposed (see § 1170.126, subd. (e)(3)). We reversed and remanded for the trial court to determine whether defendant would pose an unreasonable risk of danger to public safety such that he should not be resentenced. (*People v. Spiller*, *supra*, 2 Cal.App.5th at pp. 1026–1027.)

"On October 30, 2017, a resentencing hearing was held on remand. Defendant, who was 44 years old at the time of the hearing, testified he entered prison when he was 23 years old, caught in a cycle of drugs and crime. In prison, he joined a gang for protection, but later dropped out when a prison program made that possible. He was still involved in some fights, but very few for a prison inmate. Some fights were his fault; others were necessary to defend himself or avoid becoming a perpetual victim. He tried to avoid the younger, more aggressive inmates, although it was not always possible. He listed the classes he had taken and the other ways he was working to better himself in prison. Resentencing would mean he would have only one life sentence to serve. It would provide him a light at the end of the tunnel.

"Defendant testified that in addition to the 25-year-to-life term in the current case, he was also serving a 45-year-to-life term for the 2001 assault conviction. He believed his first eligible parole date was 2076. Without the 25-year-to-life term in the current case, however, he might be eligible for the Elderly Parole Program when he turned 60 in 2033 (see § 3055) [(footnote omitted)].

"After defendant's testimony, defense counsel argued that even if the court resentenced defendant, his earliest possible date of release would be 2033 when he turned 60 years old, at which time the Board of Parole Hearings (Board of Parole) would consider everything he had done up to that point before deciding whether to release him. Counsel argued defendant was smart, capable, and productive. He was working to better himself. Granting the petition would give him hope and motivation to continue being productive in prison.

"The trial court denied the petition, noting defendant had engaged in a lot of fights and had suffered a lot of convictions. The court had seen other defendants who managed to avoid fighting in prison. The court concluded:

'I just—there's no way I can make a finding that you're not a—that you have met the standard that you would not pose a reasonable risk to public safety. I think that you would. [¶] [Defense counsel], I don't think I can guess or speculate what would happen in his other case. *I have to assume that if I granted this, he'd be released today.* I don't know where he'll be when he's 60 years old or older. I hope he changes his way, but I just have to make that finding. I just cannot grant this motion. Petition denied.' (Italics added.)"

On August 27, 2019, we reversed the trial court's denial of defendant's petition. We explained that the trial court should have considered defendant's 45-year-to-life term on his 2001 convictions and his possible release date when it determined whether resentencing on the 1998 convictions would create a risk of danger to the public.

On remand, on November 18, 2020, the trial court took evidence and then again denied defendant's petition. It noted the existence of the elderly parole program, that the laws surrounding the felony-murder rule had changed, and that defendant may serve a lesser sentence than the 45-year-to-life term imposed on the 2001 convictions. Regardless, it concluded that defendant would be a danger to society no matter when he might be released from custody. Specifically, it concluded: "If he's out when he's 70 or 80, … [h]e's a danger. He's going to be a danger if he gets out. I don't care when he gets out."

On the same date, defendant filed a notice of appeal.

## DISCUSSION[3]

Defendant contends that the trial court abused its discretion in determining that he posed an unreasonable risk to public safety because it: (1) failed to consider when defendant might realistically be eligible for parole under the elderly parole program—to

---

**3**      The facts underlying his 1998 convictions are not relevant to this appeal.

4.

wit, not until age 67; (2) failed to consider that in order to be suitable for parole, the parole board would need to determine that he was not a threat to public safety; (3) considered possible future changes in the law in determining defendant's possible parole date; and (4) inappropriately used the resentencing proceedings to punish defendant for his 2001 convictions.[4] The People disagree on each account and argue that, in light of defendant's "lengthy criminal history, the violent circumstances of his strike offenses and in-prison fights, [and] the prison rules violations … that continue some 20 years into his incarceration," the trial court did not abuse its discretion in finding that defendant would pose an unreasonable risk to public safety if he were ever released. We agree with the People.

## A. Additional Background

In opposition to defendant's petition, the People detailed defendant's prior convictions and in-prison rules violations: In 1985, defendant was convicted of disorderly conduct (§ 647, subd. (f)); in 1992, defendant was convicted of burglary (§ 459); in 1993, defendant was convicted of battery (§ 242); in 1994, defendant was convicted of receiving stolen property (§ 496, subd. (a)); in 1995, defendant was convicted of vehicle theft (Veh. Code, § 10851, subd. (a)) and escape from custody (§ 4532, subd. (b)); in 1996, defendant was convicted of five separate counts of robbery (§ 211); in 1997, defendant was convicted of conspiracy to bring a controlled substance into a prison (§§ 182, subd. (a)(1), 4573); and in 2001, defendant was convicted of attempted murder (§§ 187, 664) and assault by means of force likely to produce great bodily injury while serving a life sentence (§ 4500).

---

**4** In his reply brief, for the first time, defendant invites us to consider recidivism rates for older inmates. He did not raise that issue below or in his opening brief. He therefore twice forfeited the issue and we do not address it here. (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761, fn. 4; *Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1184, fn. 9; *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

The People described the facts of the robbery, attempted murder, and assault convictions and submitted evidence to the trial court supporting each. Defendant committed

> "five separate robberies in 1996. All the victims were women except for the robbery that took place at the video store. During that robbery, the petitioner used a .25 caliber gun to accomplish the robbery and as he described the commission of the crime to detectives, he "felt rage" during the time he pointed the gun at the victim store clerk. While pointing the gun at the victim store clerk, the petitioner stated, "If you call the police, I will come back and kill you." The other four robberies that involved women were all purse snatches with the use of force as some of the victims struggled to keep their purses. Two of the four robberies were of senior citizens with one victim being 77 years old. The 77 year old lady fell face down on the parking lot and she suffered injuries to her face, arm, and wrist. Another robbery victim was taken to the hospital."

> As to the attempted murder and assault convictions,

> "[o]n March 11, 1999, [defendant] and [his] co-defendant severely battered victim inmate [D.M.]. The co-defendant began to strike [D.M.] without any provocation. [Defendant] then joined in on the attack and both of them took turns hitting and kicking [D.M.]. They were even kicking him in the head after he was unconscious and lying on the ground helpless. They both beat [D.M.] so severely that he was in a coma for three weeks. [D.M.] still suffers from neurological complications as a result of the attack by the [defendant] and the co-defendant. [¶] … [¶] [D.M.] … was hospitalized for six months after the assault and … has had to undergo 14 surgeries since the assault. He is now forced to walk with a cane and he suffers from pain all of the time."

Defendant also has a lengthy history of rules violations in custody,[5] including: 1997 violations for conspiracy to introduce/traffic methamphetamine, mutual combat, possession of inmate manufactured alcohol, and obstructing an officer; a 1998 violation for mutual combat; 1999 violations for battery on a peace officer with a weapon and possession of an inmate manufactured weapon (separate incidents); a 2000 violation for

---

**5** We omit discussion of the rules violations that resulted in the convictions identified above.

6.

disruptive behavior; a 2002 violation for delaying a peace officer; a 2004 violation for battery on an inmate; a 2005 violation for mutual combat; 2006 violations for methamphetamine use and possession of dangerous contraband; 2007 violations for battery on an inmate and possession of inmate manufactured alcohol; 2008 violations for possession of dangerous contraband, mutual combat, and battery on an inmate with force; a 2009 violation for refusing to submit to a random drug test; 2010 violations for fighting and battery on an inmate; a 2011 violation for fighting; a 2012 violation for possession of a deadly weapon in administrative segregation; a 2014 violation for fighting; a 2015 violation for battery on an inmate; a 2016 violation for battery on an inmate; 2018 violations for failing to attend appointments and two separate batteries on inmates; a 2019 violation for battery causing serious injury.

The People also submitted some documents prepared by defendant's physical and mental health clinicians that reflected on his dangerousness. In 2007, defendant was diagnosed with depressive disorder, polysubstance dependence, and antisocial personality disorder; in 2009, a mental health clinician noted that defendant had recently overdosed on heroin and "gets into a lot of fights and does not have patience for others"; in 2010, defendant told his clinician that "he sometimes assaults people he sees as less than [him] (child abusers and the like)" and his clinician noted that defendant "was more concerned about the consequences of fighting than anything else"; in 2012, defendant complained of depression and anger and was noted to be frequently noncompliant with medication; and in 2019, after assaulting another inmate, a clinician opined that defendant's " 'violence has a pattern of aggression that is influenced by his personality' " rather than his mood disorder.

At the hearing on defendant's petition, defendant testified on his own behalf. At the time of his testimony, defendant was 47 years old. He testified that he had received disciplinary violations since the last hearing in 2017. Some of those violations included fights with other inmates. Defendant testified that he did not use weapons during fights

7.

even though he knew where he could obtain weapons if he wanted to and had obtained weapons in the past. Defendant later admitted that he only used a weapon twice, in 1999 in attacking an officer and again in 2016 in attacking an inmate. Defendant explained that fighting is expected in custody to preserve honor and to avoid being perceived as weak. In 2019, defendant was involved in a fight that resulted in another inmate being seriously injured. Defendant testified that the other inmate started the fight and he defended himself.

Defendant did not have any violent rules violations in the year prior to the hearing. However, he had three rules violations for possession of cell phones and one violation for possession of a piece of plastic shaped into a weapon. Defendant acknowledged possession of the piece of plastic but asserted that he used it for a nonviolent purpose and did not "see it as being dangerous."

Despite his previous fights and other rules violations, defendant testified that he had prevented violence while in custody, but no reports document his positive activities. For instance, he quit the gang that he was previously a member of, he convinced another inmate not to stab an officer, he stopped riots, and he attempted to stop fights. Defendant also participated in a mental health program that had helped him manage his depression and anger. He learned coping skills, including exercise and art. Defendant also believed that he posed less risk of recidivism because he had increased family support. He took anger management, stress management, and substance abuse courses in prison.

Defendant could not "give … a guarantee" that he would not commit crimes or victimize others if he was released "except to say that if I was let out, and it had been because I have done enough good in [custody] to get [released]." Defendant did not believe that he was ready to reintegrate into society, but he was "working on being a good person." Defendant intended to continue to improve so he could be paroled when he was about 70 years of age, which he believed to be a realistic age for his parole if he was resentenced based on the instant petition.

8.

Neither party provided a specific age at which they expected defendant to be eligible for parole. Defendant's counsel noted that "[p]ossibly when he turns 60, 70, [or] 80 years old he may be eligible for parole."

The trial court discussed, and requested the parties' positions regarding, defendant's eligibility for parole under the elderly parole program. Defendant's counsel opined that defendant was not eligible for parole under that program until 2033, when he turned 60 years of age. The People offered no opinion. The trial court noted that the elderly parole program was set to change on January 1, 2021, such that some inmates would be eligible for parole at 50 years of age. The trial court also discussed the changes to the felony-murder rule and noted that it is quite difficult to predict when defendant might be eligible for parole if it granted defendant's petition.

On that record, the trial court denied defendant's petition, finding that he would be dangerous if paroled at any age.

### B.  Statutory Framework and Standard of Review

Under the Three Strikes law as it existed prior to the Act, a defendant convicted of two or more prior serious or violent felonies would be subject to a sentence of 25 years to life upon conviction of a third felony. (§§ 667, former subds. (d), (e)(2)(A), 1170.12, former subds. (b), (c)(2)(A).) Under the Act, however, a defendant convicted of two or more prior serious or violent felonies is subject to the 25-year-to-life sentence only if the third felony is itself a serious or violent felony. (§§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C).) If the third felony is not a serious or violent felony, the defendant will receive a sentence as though the defendant had only one prior serious or violent felony conviction, and is therefore a second strike, rather than a third strike, defendant. (§§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C).)

The Act also provided a means whereby prisoners currently serving sentences of 25 years to life for a third felony conviction which was not a serious or violent felony may seek court review of their indeterminate sentences and, under certain circumstances,

9.

obtain resentencing as if they had only one prior serious or violent felony conviction. (§ 1170.126, subd. (b).)  A current inmate is not entitled to resentencing if it would pose an unreasonable risk of danger to public safety.  (§ 1170.126, subd. (f).)  Whether an inmate poses an unreasonable risk of danger to public safety is a question committed to the discretion of the trial court.  (*Ibid.*)  In exercising its discretion, the court may consider:  (1) the defendant's criminal conviction history; (2) the defendant's "disciplinary record and record of rehabilitation while incarcerated"; and (3) any other evidence the court, in its discretion, determines to be relevant.  (§ 1170.126, subd. (g).)  The court must consider " ' "whether [a defendant's prior criminal and/or disciplinary history], when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years [later]." ' "  (*People v. Buford* (2016) 4 Cal.App.5th 886, 914.)  " ' "[T]he facts upon which the court's finding of unreasonable risk is based must be proven by the People by a preponderance of the evidence .…" ' "  (*People v. Piper* (2018) 25 Cal.App.5th 1007, 1016.)

We review denial of a petition to recall sentence for abuse of discretion.  (*People v. Williams* (2018) 19 Cal.App.5th 1057, 1062; *People v. Drew* (2017) 16 Cal.App.5th 253, 259–260; *People v. Buford*, *supra*, 4 Cal.App.5th 886, 895.)  " 'This standard involves abundant deference to the trial court's rulings.' "  (*Williams*, at p. 1062.)

### C.  Analysis

In our prior opinion, we remanded the matter for the trial court to consider defendant's risk to public safety when, if ever, defendant might be released.  The trial court considered defendant's consecutive 45-year-to-life term of imprisonment.  It discussed the elderly parole program as set out in section 3055,[6] the changes to the

---

[6]     Defendant is not entitled to early parole consideration based on the elderly parole program because his 45-year-to-life sentence on the 2001 convictions was imposed pursuant to the Three Strikes law.  The elderly parole program "does not apply to cases in

felony-murder rule effected by Proposition 47, and other possible ameliorative changes in the law, but it did not determine whether defendant might be eligible for parole based on any such programs or changes in law. Instead, it recognized the difficulty in accurately predicting parole eligibility based on recent and potential future changes in law. It then accepted defendant's counsel's suggestion that defendant would not be paroled until he is approximately 70 or 80 years of age. That assumption by the court is consistent with defendant serving roughly 45 to 55 years on his 45-year-to-life term—if defendant served 45 years, he would be released at age 73. The trial court's estimation of defendant's potential parole date if it granted defendant's petition is not unrealistic.[7]

The trial court then concluded that if defendant was paroled at 70 or 80 years of age—or any age—he would remain dangerous. It based that conclusion on "what [defendant had] done for the last 47 years of his life." Indeed, the trial court had before it evidence that defendant had been convicted of crimes of violence that caused injury; was often involved in fights and assaults on other inmates, sometimes using weapons or causing great bodily harm; received numerous nonviolent rules violations; was as recently as 2019 determined by a mental health clinician after he assaulted another inmate to suffer from a mood disorder and have an aggressive personality. Based on the evidence before the court, the trial court did not abuse its discretion in finding that

---

which sentencing occurs pursuant to [s]ection 1170.12, subdivisions (b) to (i), inclusive, of [s]ection 667 …." (§ 3055, subd. (g).)

[7] The People correctly note that prisoners serving third strike life sentences can earn custody credits toward an earlier parole eligibility date under a variety of circumstances: good conduct (Cal. Code Regs., tit. 15, § 3043.2), milestone completion (Cal. Code Regs., tit. 15, § 3043.3), rehabilitative achievement (Cal. Code Regs., tit. 15, § 3043.4), educational merit (Cal. Code Regs., tit. 15, § 3043.5), and extraordinary conduct (Cal. Code Regs., tit. 15, § 3043.6). Each type of credit is subject to forfeiture for serious rules violations. (Cal. Code Regs., tit. 15, §§ 3043.2, subd. (d), 3043.3, subd. (h), 3043.4, subd. (i), 3043.5, subd. (f), 3043.6, subd. (d).) Credits earned, credits forfeited, and the potential for more of each, make calculation of parole eligibility (not to mention suitability) difficult.

defendant would pose an unreasonable risk of danger to public safety at the date he might be paroled if his petition was granted.

Defendant contends that the trial court erroneously believed that defendant would be eligible for parole under the elderly parole program at 50 or 60 years of age, rather than after defendant had served at least 20 years on the current sentence. Defendant erroneously believed that if he was resentenced on his 1998 25-year-to-life sentence, the time would begin to run on his consecutive 45-year-to-life sentence and he would not be eligible for parole for 20 years under the elderly parole program. Because, as we have noted, defendant's 2001 convictions were sentenced pursuant to the Three Strikes law, and section 3055 excludes those sentenced pursuant to the Three Strikes law from elderly parole program consideration, defendant is mistaken. (§ 3055, subd. (g).) He acknowledges as much in his reply.

Next, defendant contends that the trial court failed to consider that the parole board would not release defendant if it concluded that he continued to pose an unreasonable risk of danger to public safety in determining whether to grant defendant's petition. Again, we disagree.

The trial court explained that it was resentencing in light of our remittitur, it heard defendant's argument that "there is … protection … against community violence because the parole board will still have to be convinced that [defendant] does not pose a risk of danger to the community[,]" and it referenced its consideration of "whether the release would be contingent on considerations of public safety[,]" citing our discussion of *People v. Williams*, *supra*, 19 Cal.App.5th 1057. As we explained in our prior opinion, the fact that the parole board would be required to conduct an additional dangerousness determination did not eliminate or defer the trial court's duty to determine, at the time it considered his resentencing petition, whether he would continue to pose an unreasonable risk of danger to the public at the time of his potential release. Moreover, the fact that an additional dangerousness determination would have to be made before defendant could

12.

be released was an additional safeguard for the court to consider, but it did not require the trial court to conclude that defendant would not pose an unreasonable risk of danger to the public at the time of his potential release. Here, the court explicitly considered that defendant's release would be conditioned on public safety concerns even if it granted his petition. Nevertheless, it concluded that he would always be dangerous. On the record before us, that conclusion was not an abuse of discretion.

Defendant also argues that the trial court should not have considered whether future ameliorative changes in the law may change defendant's 45-year-to-life sentence. We interpret the trial court's musing on potential modifications in the law in the context of its discussion of the difficulty in predicting defendant's potential parole date. The trial court was correct—with changes in the law, it is difficult to predict with any certainty when an inmate might be paroled. As discussed above, the trial court's estimate of defendant's potential parole dates was reasonable (and does not appear to have included a reduction in term for potential future changes in criminal sentencing laws).

Finally, defendant argues that the trial court "[c]onflated its [d]uty to [p]unish [defendant] with [i]ts [d]uty [t]o [r]esentence." Specifically, he faults the trial court for considering his 2001 convictions because he has already "been convicted and punished for the attempted murder crime." Again, as we explained above, in resolving defendant's petition, the trial court was permitted to consider: (1) defendant's criminal conviction history; (2) defendant's "disciplinary record and record of rehabilitation while incarcerated"; and (3) any other evidence the court, in its discretion, determines to be relevant. (§ 1170.126, subd. (g).) The trial court did not err in considering the fact of his prior convictions or the facts and circumstances underlying those convictions.

We find no abuse of discretion.

## DISPOSITION

The order is affirmed.