Filed 5/1/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B326131 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA471405) |
| v. | |
| MIGUEL GARCIA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lynne M. Hobbs, Judge. Affirmed with directions.

Karyn H. Bucur, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Gabriel Bradley, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Miguel Garcia appeals from an order after a resentencing hearing pursuant to Penal Code[1] section 1172.75 (retroactively invalidating prior prison term sentence enhancements imposed under former section 667.5, subdivision (b), other than for sexually violent offenses).  In 2019 Garcia pleaded no contest to second degree robbery and possession of a firearm by a felon and admitted he personally and intentionally discharged a firearm.  Garcia's 12-year sentence included seven one-year prior prison term sentence enhancements pursuant to former section 667.5, subdivision (b).  At Garcia's resentencing hearing, the superior court dismissed the prior prison term enhancements but resentenced Garcia to the same 12-year sentence by imposing the firearm enhancement that had been previously stricken, finding Garcia continued to pose a threat to public safety.

On appeal, Garcia challenges the superior court's finding under section 1172.75, subdivision (d)(1), that imposition of a lesser sentence would endanger public safety.  We review the superior court's finding that reduction of Garcia's sentence would endanger public safety, as we do for other determinations of risk in resentencing decisions, for an abuse of discretion.  In light of the nature of the offense (an armed robbery in which Garcia fired his gun), Garcia's multiple prior felony convictions of increasing seriousness, his failure to appear for sentencing, and his participation just two-and-a-half years after his sentencing in a prison riot in which he beat another inmate, the court did not abuse its discretion.  However, we direct the court to correct a clerical error in the abstract of judgment to reflect that Garcia

---

[1]     Further undesignated statutory references are to the Penal Code.

was sentenced to a concurrent term of two years on count 2 for possession of a firearm by a felon.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Robbery, Plea, and Sentencing*

According to the probation report, on May 28, 2018 Simon Ituraea was working at a recycling center in Los Angeles when a vehicle entered the parking lot and Garcia exited the passenger side carrying a handgun.  Garcia approached Ituraea and demanded Ituraea open a padlocked cabinet that served as the recycling center's cash register.  After Ituraea told Garcia there was no money in the cabinet, Garcia walked up to the cabinet and fired four shots at the padlock.  Garcia opened the cabinet, removed $1,400 in cash, and returned to the vehicle, which drove off.  Responding police officers recovered four 40-caliber shell casings next to the cabinet and two partial casings that were embedded in the cabinet stand.  The robbery was captured on security cameras, and Ituraea identified Garcia in a photographic lineup.

The information charged Garcia with second degree robbery (§ 211; count 1) and possession of a firearm by a felon (§ 29800, subdivision (a)(1); count 2).  As to count 1, it was specially alleged Garcia personally used and personally and intentionally discharged a firearm (§ 12022.53, subds. (b), (c)).  As to both counts, it was also specially alleged Garcia served six prior prison terms within the meaning of former section 667.5,

subdivision (b).[2]

On June 6, 2019 Garcia entered into a negotiated plea under which he pleaded no contest to both counts, admitted to having served seven prior prison terms within the meaning of former section 667.5, subdivision (b),[3] and admitted the firearm enhancement allegation under section 12022.53, subdivision (c), "on the condition it will be stricken." Garcia agreed to imposition of a 12-year sentence, which the trial court[4] imposed on November 26, 2019, comprising the upper term of five years for the robbery on count 1, plus seven one-year enhancements under former section 667.5, subdivision (b).[5] On count 2, the court

---

[2] The information alleged Garcia had been convicted of a total of seven felonies: a 2015 conviction for being a felon in possession of a firearm (§ 29800); a 2014 conviction for corporal injury to a spouse, cohabitant, or child's parent (§ 273.5); a 2007 conviction for second degree burglary (§ 459); a 2001 conviction for carrying a concealed weapon (§ 12025); and 2001, 2005, and 2006 convictions for driving or taking a vehicle without consent (Veh. Code, § 10851).

[3] Although the information charged Garcia with only six prior prison terms under former section 667.5, subdivision (b), as part of the negotiated plea he admitted to having seven one-year prison priors and waived his right on appeal to challenge the seventh prison prior as not having been separately served.

[4] Judge Katherine Mader.

[5] Garcia did not appear for sentencing on July 23, 2019 and was arrested. Although he had been admonished at the time of his open plea to the trial court that he could be sentenced to 31 years rather than 12 years if he failed to appear for sentencing, the court did not sentence him to additional time. At the time of his sentencing on November 26, 2019, the court noted

4

sentenced Garcia to the upper term of three years to run concurrently with the sentence on count 1, and the court imposed and struck a 20-year sentence for the section 12022.53, subdivision (c), firearm enhancement.

B.     *Resentencing Under Section 1172.75*

In mid-2022 the superior court recalled Garcia's sentence and set the case for resentencing under section 1172.75.  On September 14 the People filed a brief in opposition to resentencing, arguing there was clear and convincing evidence that imposition of a lesser sentence would endanger public safety.  Garcia's "C-file"[6] reflected that on March 18, 2022 Garcia participated in a prison riot and attacked another prisoner.  Specifically, Garcia and seven other new arrivals to the Sierra Conservation Center prison rushed toward prisoners in the yard of the non-designated programming facility (NDPF),[7] "causing a

---

the law had changed as to the imposition of one-year prison priors (effective January 1, 2020, as we discuss below), and Garcia agreed to give up his appellate rights to challenge the prior prison term enhancements.

[6]     "C-file" refers to "the confidential correctional inmate files maintained by the Department of Corrections."  (*People v. Landry* (2016) 2 Cal.5th 52, 71.)

[7]     An NDPF "houses inmates who demonstrate positive behavior and a willingness to participate in rehabilitative programs and conform to departmental policies, free from Security Threat Group (STG) influence and behavior."  (Cal. Code Regs., tit. 15, § 3269.4 (a).)  The California Department of Corrections and Rehabilitation regulations specify the conditions for excluding or removing an inmate from an NDPF placement. (*Id.*, § 3269.4 (b).)

5

riot." Garcia and three other new arrivals hit an inmate on his body, upper torso, and face with their fists. Two corrections officers ordered the attackers to "[g]et [d]own," but they did not comply and continued to fight. The second time the corrections officers gave orders to get down, the attackers complied and got down on the ground. Ultimately, corrections officers used pepper spray to control the situation. Garcia was placed in a segregated unit "for presenting an immediate threat to the safety of others and endangering institution security." When interviewed, Garcia stated, "'I am a southsider[8] and I will continue to commit violence if rehoused on an NDPF yard[.]'" The institutional classification committee concluded, "Due to [Garcia's] unwillingness to conform to behavioral expectations of an NDPF, his unprovoked attack on an inmate he did not previously know of or have any prior interaction with, and statements during the interview, he is determined to be [an] NDPF failure, presents threat to the safety of others and endangers institution security and shall not be rehoused [in the nonsegregated units]."

On September 28, 2022 Garcia filed a response arguing the People failed to present clear and convincing evidence he presented a public safety risk. His C-file showed that on May 25, 2022, two months after the incident at the Sierra Conservation Center, the classification committee at the California City Correctional Facility decided not to impose a violent offender

---

8       We assume Garcia was identifying himself as a Southern California Hispanic gang member, commonly referred to as a "Southsider." (See *People v. Miranda* (2016) 2 Cal.App.5th 829, 834 [discussing segregated housing of Southern California Hispanic gang members in prison].)

determination based on the "the circumstances of [Garcia's commitment offense], no injuries noted to the victim," and because Garcia had "minimal history of committing similar offenses." The committee further found Garcia "does not pose a threat to the safety of [p]ublic, [s]taff, and [i]nmates if housed in a minimum support facility or a program in the community." Garcia was approved for a double cell "based on no recent in-cell misconduct or predatory behavior," and he reported he was getting along with his cellmate. Garcia was also deemed eligible for contact visits with minors. Apart from the March 2022 riot and beating, there were no other instances in the C-file raising a public safety concern.

At the September 30, 2022 resentencing hearing, the superior court[9] found by clear and convincing evidence that Garcia posed a public safety risk based on the "seriousness of the offense as charged, . . . the fact that [Garcia] had a maximum of 30 years, used a firearm, discharged it, [and] suffered several prior felony convictions that seemed to become more serious in nature." The court also based its finding on Garcia's "post-conviction behavior such as [his] failure to obey the court in returning for sentencing, engaging in a riot, as well as the allegations of [a] group beating of one individual."

The superior court acknowledged it was required to resentence Garcia because of the invalidity of the one-year prison prior sentence enhancements, but it declined to reduce Garcia's sentence, finding a public safety risk and noting "the open plea main goal was to get to 12 years." The court resentenced Garcia to an aggregate sentence of 12 years comprising the low term of

---

[9] Judge Lynne M. Hobbs.

7

two years on the robbery count plus 10 years for the lesser included sentence enhancement for personal use of a firearm under section 12022.53, subdivision (b).  On count 2 the court sentenced Garcia to the middle term of two years to run concurrently with his sentence on count 1.

Garcia timely appealed.

## DISCUSSION

A. *Governing Law and Standard of Review*

"Prior to January 1, 2020, section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant had served a separate prior prison term and had not remained free of custody for at least five years.  [Citation.]  Effective January 1, 2020, Senate Bill No. 136 (2019–2020 Reg. Sess.) (Stats. 2019, ch. 590) . . . amended section 667.5 by limiting the prior prison term enhancement to only prior terms for sexually violent offenses.  [Citations.]  Enhancements based on prior prison terms served for other offenses became legally invalid." (*People v. Burgess* (2022) 86 Cal.App.5th 375, 379-380.)  The Legislature later enacted Senate Bill No. 483, effective January 1, 2022, to make the changes implemented by Senate Bill No. 136 retroactive by adding former section 1171.1 (now section 1172.75)[10] to the Penal Code.  (See Stats. 2021, ch. 728, § 1 ["it is the intent of the Legislature to retroactively apply . . . Senate Bill 136 . . . to all

---

[10]     Effective June 30, 2022, the Legislature renumbered section 1171.1 to section 1172.75 without substantive change to the statute.  (Stats. 2022, ch. 58, § 12.)

persons currently serving a term of incarceration in jail or prison for these repealed sentence enhancements"]; accord, *Burgess*, at p. 380; accord, *People v. Monroe* (2022) 85 Cal.App.5th 393, 399 (*Monroe*).)

Section 1172.75, subdivision (a), provides, "Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense . . . is legally invalid." The Department of Corrections and Rehabilitation is required to identify for the sentencing courts all persons "currently serving a term for a judgment that includes an enhancement described in subdivision (a)" (§ 1172.75, subd. (b)), and if a sentencing court verifies a defendant was sentenced under an invalid enhancement, the court "shall recall the sentence and resentence the defendant" (§ 1172.75, subd. (c)). "By its plain terms, section 1172.75 requires a full resentencing, not merely that the trial court strike the newly 'invalid' enhancements." (*Monroe, supra*, 85 Cal.App.5th at p. 402; accord, *People v. Montgomery* (2024) 100 Cal.App.5th 768, 773.)[11]

---

[11] In an uncodified section of Senate Bill No. 483, the Legislature stated that "'any changes to a sentence as a result of the act that added this section shall not be a basis for a prosecutor or court to rescind a plea agreement.'" (*People v. Montgomery, supra*, 100 Cal.App.5th at p. 774, citing Stats. 2021, ch. 728, § 1; accord, *People v. Carter* (2023) 97 Cal.App.5th 960, 972-973 [prosecutor may not rescind plea agreement due to a sentence reduction at a section 1172.75 resentencing hearing, even if the reduction resulted from application of another Penal Code provision at the resentencing]; but see *People v. Coddington* (2023) 96 Cal.App.5th 562, 570-572 [Legislature intended to

9

Section 1172.75, subdivision (d)(1), states that the resentencing "shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety," and further, resentencing "shall not result in a longer sentence than the one originally imposed."  In addition, the sentencing court "'shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing.'" (§ 1172.75, subd. (d)(2).)  "The court may consider postconviction factors, including but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice."  (§ 1172.75, subd. (d)(3); accord, *People v. Montgomery*, *supra*, 100 Cal.App.5th at p. 773; *Monroe*, *supra*, 85 Cal.App.5th at

---

preclude a prosecutor from withdrawing from a plea agreement when a prior prison sentence enhancement is struck, but the prosecutor may withdraw from the plea if the sentence is reduced based on a different code provision].)  At the resentencing hearing, Garcia argued that imposing the firearm enhancement that had been struck as part of the negotiated plea would be the equivalent of the court rescinding its plea offer.  The parties do not address this argument on appeal.

p. 399.)[12]

No published decision has addressed the standard for reviewing a superior court's decision not to reduce a defendant's sentence under section 1172.75, subdivision (d), based on a finding the defendant endangers public safety. However, as the People and Garcia observe, we review for an abuse of discretion a superior court's risk determination under other ameliorative sentencing legislation. (See, e.g., *People v. Mendoza* (2023) 88 Cal.App.5th 287, 298 [applying abuse of discretion standard to determination whether dismissal of an enhancement pursuant to amendments to section 1385, subdivision (c)(2), would endanger public safety because the determination is "similar (though not identical) to the determination of whether 'resentencing the petitioner would pose an unreasonable risk of danger to public safety' under subdivision (b) of section 1170.18"]; *People v. Hall* (2016) 247 Cal.App.4th 1255, 1261 [trial court's determination whether resentencing would create an "unreasonable risk of danger to public safety" under section 1170.18, subdivisions (b) and (c), is reviewed for an abuse of discretion because the trial court's decision "'is inherently factual, requiring the trial court to determine whether the defendant meets the statutory criteria for relief'"].)

We conclude that, similar to the standard that applies to other resentencing decisions involving a superior court's risk

---

[12] The sentencing court is also required to appoint counsel for the defendant, and the court may not impose a sentence exceeding the middle term unless circumstances in aggravation that justify the upper term have been stipulated to by the defendant or found true beyond a reasonable doubt. (§ 1172.75, subd. (d)(4), (5).)

determination, we review for an abuse of discretion a superior court's decision under section 1172.75, subdivision (d)(1), that reduction of a defendant's sentence would endanger public safety. Section 1172.75, subdivision (d)(1), expressly contemplates that the superior court will make a factual determination whether a defendant poses a risk to public safety; subdivision (d)(2) requires the court to consider sentencing rules that "provide for judicial discretion"; and subdivision (d)(3) states the court "may" consider a non-exhaustive list of postconviction factors. Thus, section 1172.75, subdivision (d), vests the superior court with broad discretion based on an inherently factual inquiry. (See *People v. Hall, supra*, 247 Cal.App.4th at p. 1261.)

Under an abuse of discretion standard, "'we ask whether the trial court's findings of fact are supported by substantial evidence, whether its rulings of law are correct, and whether its application of the law to the facts was neither arbitrary nor capricious.'" (*People v. Clancey* (2013) 56 Cal.4th 562, 578; see *People v. Buford* (2016) 4 Cal.App.5th 886, 901 [facts supporting trial court's denial of a petition for resentencing under section 1170.126 are "subject to our review for substantial evidence," but "[i]f a factor (for example, that the [defendant] participated in a riot, is violent due to repeated instances of mutual combat, etc.) is not established [to the requisite standard of proof], it cannot form the basis for a finding of unreasonable risk"].) Ultimately, the superior court's risk finding will be upheld "if it falls within 'the bounds of reason, all of the circumstances being considered.'" (*Buford*, at p. 901; citing *People v. Giminez* (1975) 14 Cal.3d 68, 72 ["in the absence of a clear showing that its sentencing decision was arbitrary or

12

irrational, a trial court should be presumed to have acted to achieve legitimate sentencing objectives"].)

B.      *The Superior Court Did Not Abuse Its Discretion in Finding a Reduction in Garcia's Aggregate Sentence Would Endanger Public Safety*

Garcia's sole contention on appeal is that the superior court abused its discretion at the section 1172.75 resentencing hearing in finding that imposition of a lesser sentence would endanger public safety.  In particular, he argues the court's risk determination was "irrational or arbitrary because the trial court relied on certain factors not related to postconviction and because the postconviction factors relating to the prison incident were not supported by the record."  The court did not abuse its discretion.

The superior court based its risk determination on the "seriousness of the offense as charged," the high maximum potential sentence, Garcia's firing a gun during the robbery, that Garcia "suffered several prior felony convictions that seemed to become more serious in nature," and Garcia's post-conviction behavior, including his failure to appear for sentencing and his participation in a prison riot and beating an inmate.  All of these findings are aggravating circumstances under the sentencing rules promulgated by the Judicial Council, which the superior court was required to consider under section 1172.75, subdivision (d)(2).  (See Cal. Rules of Ct., rule 4.421 [court may consider that: defendant used a weapon in the commission of the crime (rule 4.421(a)(2)); defendant was convicted of other crimes for which consecutive sentences could have been imposed (rule 4.421(a)(7)); defendant engaged in violent conduct that indicates a serious danger to society (rule 4.421(b)(1)); and

defendant's prior convictions "are numerous or of increasing seriousness" (rule 4.421(b)(2).)  Garcia does not contend there were any mitigating sentencing circumstances, nor does the record show there were.  And Garcia does not provide any authority for his assertion that the superior court is limited to consideration of post-conviction conduct—an assertion that is inconsistent with section 1172.75, subdivision (d)(1) and (2).

With respect to Garcia's postconviction behavior, which includes "the disciplinary record and record of rehabilitation of the defendant while incarcerated" (§ 1172.75, subd. (d)(3)), substantial evidence supports the superior court's finding by clear and convincing evidence that Garcia presented a public safety risk.  Garcia's C-file states that in March 2022—just two and a half years after his sentencing and six months before the resentencing hearing—Garcia was among a group of arrivals to the Sierra Conservation Center who charged the prison yard and began a riot, and Garcia (with three others) beat an inmate without provocation.  Garcia told corrections officers he was a "southsider" and "I will continue to commit violence" unless rehoused.  The classification committee concluded Garcia was "a threat to the safety of others and endangers institution security," and it housed him in a segregated unit.

Garcia argues, as he did in the trial court, that in May 2022 the classification committee at a different prison facility determined he would not pose a threat to the safety of the public, staff, or other inmates if he were housed in a less restrictive facility or a program in the community, and it approved him for a double cell and contact with minors given his lack of recent misconduct in his cell or predatory behavior.  However, the fact the second classification committee determined Garcia did not

14

pose a public safety threat for housing purposes shortly after the first classification committee made a contrary determination does not contradict the evidence of Garcia's violent conduct in March 2022. The superior court's public risk determination based on uncontroverted evidence of Garcia's postconviction behavior in combination with the circumstances of his commitment offense and criminal record was not arbitrary or capricious.

C.  *The Superior Court Should Correct a Clerical Error in the Abstract of Judgment*

The People correctly point out the abstract of judgment contains an error that should be corrected. At the resentencing hearing Garcia was sentenced on count 2 for possession of a firearm by a felon to the middle term of two years, to be served concurrently with his 12-year sentence on count 1. However, in an apparent clerical error, the abstract of judgment incorrectly states Garcia's sentence on count 2 is a concurrent term of three years. The trial court should correct the error. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 ["Courts may correct clerical errors at any time, and appellate courts . . . have ordered correction of abstracts of judgment that did not accurately reflect the oral judgments of sentencing courts"]; *People v. Gobert* (2023) 89 Cal.App.5th 676, 689 [same].)

## DISPOSITION

The September 30, 2022 order resentencing Garcia is affirmed. The superior court is directed to correct the abstract of judgment to state Garcia was sentenced on count 2 for possession of a firearm by a felon (§ 29800, subdivision (a)(1)) to a term of

15

two years in state prison, to be served concurrently with his sentence on count 1, and to send a corrected abstract of judgment to the Department of Corrections and Rehabilitation.


                              FEUER, Acting P. J.

We concur:



        MARTINEZ, J.



        RAPHAEL, J.*

---

\*        Judge of the San Bernardino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.